IN RE ESTATE OF EDWARD J. MURRAY.

MARY E. MURRAY, Appellee, v. MRS. J. T. MULDOON, Executrix, Appellant.

No. 46737.

OCTOBER 16, 1945.

F. A. Ontjes, of Mason City, for appellant.

Campbell & Campbell, of Charles City, for appellee.

Tobias E. Diamond, United States Attorney, amicus curiae.

MILLER, C. J.—■ Edward J. Murray died, testate, May 15, 1944, leaving surviving him Mary E. Murray, his widow, six sisters, and a brother. The will was admitted to probate on June 6, 1944. It made certain specific devises and bequests to the widow and also gave her one half of all the rest, residue, and remainder of the estate. All of the estate, not necessary for debts and expenses and not given to the widow, was devised and bequeathed to the testator's brother and six sisters, share and share alike. The widow and Mrs. J. T. Muldoon, sister of testator, were nominated to be executrices of the estate. At the time the will was admitted to probate they were appointed and promptly qualified as such. Ten days later the executrices filed an inventory showing property valued at $152,294.82, of which $18,090 was real estate.

Miscellaneous claims were filed aggregating $1,450.84. On August 24, 1944, the widow filed a claim for services in the sum of $16,875. On September 14, 1944, the widow filed two applications. In one of them she asserted that the inventory included ten $1,000 government bonds, series E, five dated January 1942, and five dated January 1943, which were payable to Mary E. Murray and were her property. In the other application she asserted that the inventory included ten $1,000 government bonds, series E, all dated January 1944, which were payable to E. J. Murray or Mary E. Murray and were her property. The prayers were that said bonds be omitted from the inventory and be turned over to the widow. In response to the sustaining of a motion for more specific statement, the widow asserted that her claim of ownership of the bonds was based upon the facts (1) that the terms of the bonds made them payable to her and (2) that the deceased in his lifetime gave said bonds to her and delivered possession to her. The answer of Mrs. Muldoon, executrix, was in the nature of a general denial.

Tobias E. Diamond, United States Attorney for the North-

ern District of Iowa, at the direction of the Attorney General of the United States, pursuant to section 367, Revised Statutes of the United States, 5 U. S. C., section 316, filed a suggestion of interest of the United States in the litigation, asserting: The case involves the ownership of certain United States savings bonds, issued under the Second Liberty Bond Act as amended by the Public Debt Act of 1941, 31 U. S. C., sections 757b, 757c, and circulars and regulations promulgated thereunder by the Secretary of the Treasury; the United States, as obligor under said bonds, has a direct interest in the determination of the ownership thereof in accordance with the federal statutes and treasury regulations applicable thereto; the salability of such bonds, in accordance with such statutes and regulations, is vital to the ability of the government to borrow money on favorable terms; the co-ownership provisions thereof have promoted the sale of such bonds; co-ownership registrations constitute seventy-five per cent of all savings bonds sold; the United States has the power to borrow money on such terms as it may fix and, under the supremacy clause of the United States Constitution [Article VI, clause 2], such power cannot be impaired by state law; under the laws, rules, and regulations aforesaid, the bonds made payable to Mary E. Murray without any co-payee are payable to her alone, and the bonds made payable to her as co-owner are payable to her as such; the treasury regulations are reasonable, within the powers of the secretary, have the force and effect of law, and are final and controlling on the rights of the parties herein as a part of the contracts made by the government; the widow is the sole and absolute owner of said bonds, is the person to whom the United States is obligated, and the estate of Edward J. Murray has no interest whatsoever in said bonds or the proceeds thereof. The prayer was that the court so declare.

Mrs. Muldoon, as executrix, moved to strike the suggestion of interest of the United States because (1) it was a mere statement of opinions and conclusions and arguments of counsel and (2) it is incompetent, irrelevant, immaterial, and redundant matter, wholly insufficient to affect the estate's ownership of the bonds. The court overruled such motion and granted

the United States Attorney leave to appear in person for the purpose of asserting the interest of the United States herein. The answer of the executrix to such suggestion of interest was in the nature of a general denial.

At the trial it was stipulated by counsel that the issues being tried included, in addition to the question of possession of the $20,000 of government bonds and their inclusion in or exclusion from the inventory of the estate, the question of the ownership of the bonds, whether they belong to the estate or to the widow. The bonds were introduced in evidence and it was stipulated that they were all purchased by decedent with his own funds during his lifetime. They were made payable as stated in the widow's applications.

Each bond contained the following provisions:

"This is a defense Savings Bond of Series E, of an issue of United States Savings Bonds authorized by the Second Liberty Bond Act as Amended, and issued pursuant to Treasury Department circular No. 653, Dated April 15, 1941, to which reference is made for a statement of the rights of Holders, as fully and with the same effect as though herein set forth.

"This bond is not transferable; and, except as provided under said circular, it is payable, at Maturity or on earlier redemption, only to the registered owner and upon the presentation and surrender of this bond with the request for payment on the back hereof duly executed, all in accordance with the provisions of said circular and the regulations prescribed from time to time thereunder."

Some of the regulations, referred to in the above provision, are as follows:

"Section 315.2 Registration—(a) General. United States Savings Bonds will be issued only in registered form. The name and complete post office address of the owner and that of the coowner or designated beneficiary, if any, and the date as of which the bond is issued will be inscribed thereon at the time of issue by an authorized issuing agent. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in

the regulations in this part, the Treasury Department will treat as conclusive the ownership of and interest in the bond so expressed. No designation of an attorney, agent or other representative to request or receive payment on behalf of the owner, nor any restriction on the right of such owner to receive payment of the bond, other than as provided in the regulations in this part, may be made in the registration or otherwise. * * *

"(c) Forms of registration. Subject to the restrictions and exceptions set forth in the next preceding paragraph the following forms of registration are authorized:

"(1) In the names of natural persons (that is, individuals), whether adults or minors, in their own right as follows:

"(i) In the name of one person, for example, 'John A. Jones'.

"(ii) In the names of two (but not more than two) persons in the alternative as coowners, for example, 'John A. Jones OR Mrs. Ella S. Jones'. No other form of registration establishing coownership is authorized.

"(iii) In the name of one (but not more than one) person, payable on death to one (but not more than one) other person, for example, 'John A. Jones, payable on death to Miss Mary E. Jones'; the first person named is hereinafter referred to as the owner or registered owner and the second named as the beneficiary or designated beneficiary. * * *

"Section 315.3 Limitation on transfer. United States Savings Bonds are not transferable and are payable only to the owners named thereon except in the case of the disability or death of the owner or as otherwise specifically provided herein, but in any event only in accordance with the provisions hereof. Accordingly, savings bonds may not be sold and may not be hypothecated as collateral for a loan and may not be used to secure the performance of an obligation except as expressly provided by §315.18. * * *

"Section 315.11 Coowners—(a) Payment or reissue. A savings bond registered in the names of two persons as coowners, for example, 'John A. Jones OR Mrs. Mary C. Jones', will be paid or reissued as follows:

"(1) During the lives of both coowners. During the

lives of both coowners the bond will be paid to either coowner upon his separate request without requiring the signature of the other coowner; and upon payment to either coowner the other person shall cease to have any interest in the bond. The bond will also be paid to both coowners upon their joint request, in which case payment will be made by check drawn to the order of both coowners in the form, for example, 'John A. Jones *and* Mrs. Mary C. Jones', and the check must be endorsed by both payees. The bond will not be reissued in any form during the lives of both coowners except as specifically provided in the regulations in this part.

"(2) After the death of one coowner. If either coowner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized by the Treasury Department as the sole and absolute owner of the bond, and payment will be made only to him; Provided, however, That if a coowner dies after he has properly executed the request for payment and after the bond has actually been received by a Federal Reserve Bank or the Treasury Department, payment of the bond, or check if one has been issued, will be made to his estate in accordance with the provisions of §315.16." [Treasury Department Circular No. 530, Fourth Revision, 6 F. R. 2191.]

The record is voluminous. We will refer to the fact questions presented thereby later. The court determined that all of the twenty $1,000 bonds involved herein are the absolute property of the widow, Mary E. Murray, in her own right, and do not constitute property of the estate, and entered decree accordingly. Mrs. Muldoon, as executrix, appeals to this court.

I. At the outset we shall determine the effect of the Treasury Regulations as a part of the contracts which are evidenced by the twenty savings bonds involved herein.

As above pointed out, each bond contained a provision that it was "issued pursuant to Treasury Department circular No. 653, Dated April 15, 1941, to which reference is made for a statement of *the rights of Holders,* as fully and with the

same effect as though herein set forth." (Italics supplied.) The suggestion of interest of the United States asserted:

"12. Each United States Savings Bond registered in co-owner form evidences a contract whereby the United States for a valuable consideration promises to pay a specified sum to one or the other of the named coowners on specified conditions. Section 22 of the Second Liberty Bond Act, as *added* by the Act of February 4, 1935, 49 Stat. 21, Title 31, U.S.C., Sec. 757c, and the regulations promulgated thereunder are as a matter of fact a part of each such contract." (Italics supplied.)

To the foregoing, Mrs. Muldoon responded as follows:

"Par. 14. Further answering paragraph twelve of said Suggestion, this Executrix states that said paragraph is a mere statement of opinions and conclusions of the pleader and she admits the same."

In the case of Sinift v. Sinift, 229 Iowa 56, 88, 293 N. W. 841, 856, in discussing prior Treasury Regulations relating to government bonds, we stated:

"We do not question the authority of Congress to enact legislation authorizing the issuance of bonds containing such restrictions and provisions, *including rights of ownership, as* it may see fit * * * ." (Italics supplied.)

Under the issues herein it would seem to be self-evident that the treasury regulations of April 15, 1941, must be considered as included in the contractual obligations of the parties herein. The vital question is, What is the legal effect of such regulations herein?

These treasury regulations of 1941 have been interpreted by various courts. In the case of In re Di Santo's Estate, 142 Ohio St. 223, 229, 51 N. E. 2d 639, 642, the court states:

"It is the contention of appellant that the treasury regulations which are made a part of the bond contract are merely for the convenience of the treasury in order to facilitate payment and are not sufficient to pass title to the designated

beneficiary upon the death of the registered owner. While we agree that one of the purposes of such provisions was to facilitate payment, we are definitely of the opinion that the terms of the contract between the government and the bondholder are sufficient to and do pass title to the named beneficiary upon the death of the registered holder. * * *

"That a bond is a contract needs no citation of authority. That the terms of the contract will be enforced so long as the same are not illegal is also elementary. The terms of the treasury circulars are specifically made a part of the contract as if they were fully set out in the bond form.

"The bonds in question are not transferable. The identity of the owner as well as that of the payee is to be determined according to the tenor of the bond. (Subject to the determination of ownership under Section 315.17, supra.)"

In the case of Conrad v. Conrad, 66 Cal. App. 2d 280, 285, 152 P. 2d 221, 224, the court states:

"In cases from other jurisdictions which announced what we term the 'majority rule' it is held that when the coowner, who furnishes the money with which to pay for the bonds, dies, they belong to the surviving coowner with no interest left in the deceased's estate. They hold that the question is not one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving coowner, and that death terminates all interest of the other coowner. Some of the bonds in those cases were issued to two persons as coowners, and others to the purchaser, and upon his death, to a named beneficiary. There seems to be no logical distinction to be made between the rights in the bonds of a surviving coowner or a surviving beneficiary.

"The following cases support the foregoing rule: Warren v. United States, 68 Ct. Cl. 634, certiorari denied, 281 U. S. 739 [50 S. Ct. 346, 74 L. Ed. 1154]; United States v. Dauphin Deposit Trust Co., 50 F. Supp. 73; In re Deyo's Estate, 180 Misc. 32 [42 N. Y. S. 2d 379]; In re Karlinski's Estate, 180 Misc. 44 [38 N. Y. S. 2d 297, 40 N. Y. S. 2d 22] 43 N. Y. S. 2d 40; In re Di Santo's Estate, 142 Ohio St. 223 [51 N. E. 2d 639]; In re Stanley's Estate, 102 Colo. 422 [80 P. 2d 332];

Franklin Washington Trust Co. v. Beltram, 133 N. J. Eq. 11 [29 A. 2d 854, 856].''

In the case of Mitchell v. Edds, Tex. Civ. App., 181 S. W. 2d 323, 326, the court states:

''The nature of the bond transaction lifted it out of the category in which all the other transactions involved rested, for the bond transaction was one resting in contract, rather than upon a gift, or devise. The status of the title to those bonds was fixed by the contract between Julia Rhode and the United States Government, whereby the former purchased the bonds from the latter and paid for them under an agreement that the Government would pay the amount of the bonds to Retta B. Edds at their maturity at or after the death of Julia E. Rhode. The death of the latter, automatically fixed the relation of creditor and debtor between Retta B. Edds and the Government, whose obligation to her ripened, not by devise, but by the happening of the event which fixed the liability of the Government to Retta B. Edds, the payee, in accordance with the contractual obligation of the Government to pay her the amount of the bonds at maturity and upon the death of Julia E. Rhode. The facts of the transaction were stipulated by all the parties, and under those facts Retta B. Edds became the owner of full title to the bonds. United States v. Dauphin Deposit Trust Co., D. C. Pa., 50 F. Supp. 73; In re Deyo's Estate, 180 Misc. 32, 42 N. Y. S. 2d 379; Franklin Washington Trust Company v. Beltram, 133 N. J. Eq. 11, 29 A. 2d 854.''

In the case of Franklin Washington Tr. Co. v. Beltram, 133 N. J. Eq. 11, 12, 29 A. 2d 854, 856, the court states:

''The statute authorizing the Secretary of the Treasury to issue Savings Bonds subject to such terms and conditions, as he may prescribe, is a valid exercise of the constitutional power 'to borrow money on the credit of the United States.' Art. I, §8, cl. 2. The borrowing power necessarily includes the power to fix the terms of the government's obligation. Perry v. United States, 294 U. S. 330, 351 [55 S. Ct. 432, 79 L. Ed. 912, 95 A. L. R. 1335]; The Legal Tender Cases, 110

U. S. 421, 444 [4 S. Ct. 122, 28 L. Ed. 204]. The Treasury regulations under which the bonds were issued and reissued are within the authority given the Secretary by the Congress and have the force of federal law. United States v. Birdsall, 233 U. S. 223 [34 S. Ct. 512, 58 L. Ed. 930]; United States v. Janowitz, 257 U. S. 42 [42 S. Ct. 40, 66 L. Ed. 120]. No state law can vary the terms of the federal obligations or derogate from their full enforceability. Constitution, article VI, cl. 2. Irvine v. Marshall, 20 How. 558 [15 L. Ed. 994]; Ruddy v. Rossi, 248 U. S. 104 [39 S. Ct. 46, 63 L. Ed. 148, 8 A. L. R. 843].

"The Treasury regulations above quoted were not devised solely for the protection of the Treasury, to simplify its task of determining whom to pay in case of the death of the registered owner. The regulations have the further effect of defining the rights of the registered owner and the beneficiary as between themselves, for these rights inter sese are the reflection of the contract obligation of the United States to the owner and to the beneficiary severally. The title of the registered owner, his cause of action against the United States, is cut off by his death; the beneficiary thereupon becomes sole and absolute owner."

In the case of Harvey v. Rackliffe, 141 Maine 169, 41 A. 2d 455, 456, the court states:

"The regulations provide in part that the form of registration 'will be considered as conclusive of such ownership and interest'; that the bonds 'are not transferable and are payable only to the owners named'; that they may not be sold or hypothecated; that they may be paid to the registered owner during his lifetime; that after his death the beneficiary if surviving will be recognized as 'the sole and absolute owner'; and that after the death of the surviving beneficiary the bond may be paid or reissued in accordance with the regulations 'as though it were registered in the name of the surviving beneficiary alone'.

"No contention is made, nor could any validly be made, that these regulations are not a proper exercise of the power

given to the Secretary of the Treasury by the Congress; and they accordingly have the force and effect of Federal law. Cases involving this and analogous situations have consistently so held. Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; United States v. Sacks, 257 U. S. 37, 42 S. Ct. 38, 66 L. Ed. 118; United States v. Janowitz, 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; Bowles v. Willingham, 321 U. S. 503, 64 S. Ct. 641, 88 L. Ed. 892.

"After the death of Mr. Griffin, Mrs. Covel, the beneficiary owner, died; and the bonds came into the possession of the appellant as her administratrix who, in accordance with the treasury regulations, cashed them. The controversy is between the two estates as to the title to the proceeds. The Judge of Probate has ruled that the money belongs to the administratrix of the estate of Mr. Griffin.

"Her contention is that the case of In re Garland, Appellant, 126 Me. 84, 136 A. 459, is controlling. This holds that a bank deposit payable to either of two persons or the survivor does not by reason of its form belong to the survivor, the question being to whom did the money, represented by the deposit book, actually belong. If it was the money of the deceased and he reserved a right of control over it in his lifetime, it was the property of his estate after his death. For to hold otherwise would be to sustain a gift intended to take effect after death in violation of the Statute of Wills.

"The appellant and the United States claim that the Garland case is not controlling; that there is here a contract by which the United States agreed to pay this money to the survivor; that the performance of that contract according to its terms is one of the essential functions, on which the ability of the Federal government to borrow money on a reasonable basis depends; and that no state law can stand in the way of the fulfillment of that obligation both in accordance with its letter and its spirit."

After an elaborate discussion of the supremacy clause of

the United States Constitution, the Maine court concludes its opinion as follows:

"We are not asked to overrule a rule of law already established in this state, but only to decide that, because of the supremacy of Federal law, the state rule has no application to this contract. This we have no hesitation in doing. The duty of the state in this instance is plain. As was said by a great Chief Justice: 'Nor can it be inconsistent with the dignity of a sovereign State to observe faithfully, and in the spirit of sincerity and truth, the compact into which it voluntarily entered when it became a State of this Union. On the contrary, the highest honor of sovereignty is untarnished faith. And certainly no faith could be more deliberately and solemnly pledged than that which every State has plighted to the other States to support the Constitution as it is, in all its provisions, until they shall be altered in the manner which the Constitution itself prescribes.' Ableman v. Booth, 21 How. 506, 525, 16 L. Ed. 169, 176.

"The case is remanded to the Supreme Court of Probate for the entry of a decree sustaining the appeal and for such relief as is required by this opinion."

In the course of the opinion last quoted, the Maine court refers to the opinion of this court in Sinift v. Sinift, supra, 229 Iowa 56, 293 N. W. 841, and to the case of Decker v. Fowler, 199 Wash. 549, 92 P. 2d 254, 131 A. L. R. 961, and classifies each as rejecting the supremacy clause. We do not believe that the position of the Maine court is accurate in this regard. In the Sinift case, as above quoted, we expressly recognized the power of Congress. The Sinift case was originally decided by this court in 1939, and was finally decided in 1940, after rehearing had been granted. The Decker case was decided by the Washington court in 1939. Obviously, neither case involved an interpretation of the treasury regulations of 1941 which are now before us. In view of the difference between the regulations which were then construed and those now before us neither decision is controlling here.

We are of the opinion that the views taken by the courts above quoted, that the regulations now before us constitute

proper exercise of the power given to the Secretary of the Treasury by the Congress, are correct and that they accordingly have the force and effect of federal law. The authorities cited by each court to sustain such conclusion seem to be decisive.

We are also of the opinion that the regulations of 1941 have the effect of determining the legal rights of the parties in regard to ownership of bonds issued pursuant thereto. But we do not find it necessary to base our decision on the supremacy clause because it is our judgment that the law of this state is not in conflict with such regulations.

II. As heretofore stated, the regulations of 1941 are a part of the provisions of the bonds here before us. These regulations provide that savings bonds will be issued *only* in registered form and the name of the owner and the co-owner or designated beneficiary, if any, must be stated. The form of registration used must express the *actual ownership of and interest in* the bond. Bonds may be registered in names of individuals *in their own right only* as follows: in the name of one person as sole owner; in the name of two persons (but not more than two) as co-owners; in the name of one person and payable to one other on death. If there are two co-owners, during the lives of both either may exercise the powers of exclusive ownership, but, upon the death of either, the survivor will be recognized as the sole owner. These regulations must be given a reasonable interpretation. Obviously, these provisions and the others, which various courts have specified in the foregoing quotations, do more than protect the Treasury Department in the matter of payment. They limit the ownership that may be contracted for and require that the actual ownership be expressed. The Iowa law is not in conflict therewith.

We have repeatedly recognized that, where a contract is affected with a public interest, legislation may prescribe and limit the terms of such a contract even to the extent of fixing the rights of and obligations to third persons for whose benefit the contract is made. For example, the terms of a surety bond of a public contractor are prescribed by legislation and the

rights of and obligations to those furnishing labor and materials on the project (not parties to the contract but for whose benefit it is made) are specifically prescribed thereby. Philip Carey Co. v. Maryland Cas. Co., 201 Iowa 1063, 206 N. W. 808, 47 A. L. R. 495; Francesconi v. Independent Sch. Dist., 204 Iowa 307, 214 N. W. 882. Similarly, a public-liability policy or surety bond of a common carrier may be circumscribed by statute as to the provisions thereof fixing the rights of third parties for whose benefit the contract is made. Curtis v. Michaelson, 206 Iowa 111, 219 N. W. 49; Eggermont v. Central Sur. & Ins. Corp., 236 Iowa 197, 17 N. W. 2d 840.

There is nothing inconsistent with the Iowa law in the regulations which prescribe the provisions of savings bonds as to ownership thereof even as to third persons for whose benefit the contractual obligations may be made. We have recognized that a contract may be made for the benefit of a third party and that the rights of such third party may be dependent upon his surviving another designated beneficiary. In re Estate of Walker, 234 Iowa 1126, 15 N. W. 2d 260. Where one purchased a note and mortgage in his name, with his own money, and afterward assigned it to himself and wife, after his death, the wife was held to be owner of a one-half interest therein. Abegg v. Hirst, 144 Iowa 196, 122 N. W. 838, 138 Am. St. Rep. 285. A certificate of deposit, made "to the order of self or Hazel Pent, daughter," after the death of the mother, was held to be the property of the daughter. Andrew v. Citizens State Bk., 205 Iowa 237, 238, 216 N. W. 12.

Appellant relies strongly upon certain language appearing in the case of Taylor v. Grimes, 223 Iowa 821, 826, 827, 273 N. W. 898, to the effect that this court will not recognize a joint interest in a bank account unless there is such a gift as divests the donor of all interest therein. This language was, in effect, dictum because only three of the eight members of this court participating in such decision concurred therein. This language was made the basis for the first opinion filed in Sinift v. Sinift (see 284 N. W. 91, 94), but, as above stated, that opinion was withdrawn on rehearing and such language was not made the basis of the final decision of this court. In the case of In re Estate of Winkler, 232 Iowa 930, 5 N. W.

2d 153, we expressly held that the parties to a contract with a bank for a savings account could and did, by such contract, create a joint tenancy in such account with the right of survivorship.

By reason of the foregoing decisions of this court, and others of similar import which might be cited, we hold that there is no repugnancy between the regulations of the Treasury Department herein and the laws of Iowa so that it is not necessary to base our decision on the supremacy clause of the United States Constitution.

Pursuant to the authorities above reviewed, we hold that the widow is the owner of the twenty $1,000 savings bonds herein and that her title thereto is derived from the contractual rights and obligations evidenced by such bonds, when considered with the treasury regulations which are incorporated therein. The trial court's decision was therefore correct.

III. As above pointed out, the widow asserted two propositions in support of her claim of ownership of the bonds. The first proposition was based upon the contract with the government. We have sustained her contention in this regard. It therefore is not necessary for us to discuss or decide the various contentions of the parties which relate to the second proposition, namely, the claim that her title was based upon a gift to her and delivery of the bonds to her. This also obviates the necessity of prolonging this opinion with a discussion of the assignments of error herein which are based upon certain rulings on the introduction of evidence. Such evidence related to the widow's second proposition and was not of vital import as to the first proposition.

IV. Appellant assigns error in the order of court which overruled her motion to strike the suggestion of interest of the United States and authorized the United States Attorney to appear in person for the purpose of asserting the interest of the United States herein. Counsel concedes that the government had the right to intervene for that purpose but insists that the method here employed was improper. We hold that the ruling complained of in effect treated the government as an intervener and was proper.

V. In appellant's reply to the brief of the United States Attorney, filed in this court as amicus curiae, appellant contends that the treasury regulations ought not to be a cloak for a disloyal or dishonest agent or furnish a haven for fraudulent grantors and their fraudulent grantees. There is no such question presented by this record. Equity has broad powers to enforce constructive or resulting trusts to relieve against acts of fraud and the like. Such powers relate to the equitable title to property as distinguished from the legal title. No equitable title to these bonds is asserted by this estate. The widow bases her claim on the fact that she has legal title to these bonds. The executrix denies that she has such legal title. That is the only issue before us. On that issue, the widow is entitled to prevail.

The cause is—Affirmed.

OLIVER, BLISS, GARFIELD, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.

HALE, J., not sitting.