LORETTA M. REYNOLDS *vs.* JAMES E. REYNOLDS & another (and a companion case[1]).

Bristol.    October 24, 1949. — February 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Gift.    Trust,* Express trust: what constitutes; Of personal property; United States bonds. *Bond,* United States bond.

A valid trust in favor of a son of the owner of a savings bank account was not created by the owner's causing the account to be changed into his name in trust for the son, where it appeared that the owner did not intend to transfer the beneficial title in the account to the son, but intended to maintain full control thereof during his lifetime and that at his death the account should be distributed by the son among certain persons according to a memorandum which was intended to be a testamentary disposition by the owner but was not lawfully executed as such; and upon the owner's death the administrator of his estate was entitled to the account as against the son.

By reason of certain applicable and controlling Federal regulations, upon the death of the owner of certain United States bonds, "Series. G," which had been issued in his name as "registered owner" payable on his death to his son as "beneficiary," the son acquired not only the legal title to the bonds and the right to cash them but also the entire beneficial interest in their proceeds, and was not subject to any trust respecting the proceeds, notwithstanding that the owner had intended not to transfer a beneficial interest in the bonds to the son but that the son should distribute the proceeds among certain persons in accordance with a memorandum given to him by the owner.

---

[1] The companion case is by Morris R. Brownell, administrator of the estate not already administered of John Reynolds, against the same respondents.

PETITIONS, filed in the Probate Court for the county of Bristol on November 16, 1948.

The cases were heard by *Fuller*, J.

*J. C. Duggan*, (*F. Vera* with him,) for James E. and Sarah V. Reynolds.

*S. E. Bentley*, for Loretta M. Reynolds.

*A. P. Doyle*, for Brownell, administrator.

*G. F. Garrity*, United States Attorney, & *W. J. Koen*, Assistant United States Attorney, by leave of court submitted a brief as amici curiae.

WILKINS, J. John Reynolds of New Bedford died intestate on August 17, 1946, leaving a widow, who is the petitioner in the first case, and three sons and two daughters by a former marriage. The respondents in both cases are one of the sons, James E. Reynolds (hereinafter called the respondent), and his wife, Sarah V. Reynolds. Both cases relate to the ownership of a savings account in the name of the deceased in trust for the respondent, and of certain United States savings bonds, or their proceeds, formerly in the name of the deceased but payable on death to the respondent. The widow appealed from a decree dismissing her petition. On the administrator's petition a decree was entered in his favor on both items, which were adjudged to be held "upon trusts which failed," and the respondents appealed. In each case the judge made a report of the material facts found by him. These, so far as now material, are identical. In the administrator's case the report was made under the statute. G. L. (Ter. Ed.) c. 215, § 11, as amended by St. 1947, c. 365, § 3. In the widow's case the report, although voluntary, was intended to include all facts necessary for the determination of the issues, and has the same effect as a report made under the statute. The evidence is not reported.

On April 22, 1946, the decedent, when about to undergo an operation, caused a savings account in his name in a New Bedford bank to be changed so as to designate an account in trust for the respondent "in the usual form of savings trustee accounts." On the same day he handed to

the respondent several sealed envelopes addressed to him and to other members of the family. Although one envelope contained the savings account book, the respondent first learned of the change through a representative of the bank who called on him that day with a card for his signature. Another envelope contained a memorandum of that date hereinafter referred to. The deceased told the respondent to return the envelopes should he survive the operation. The deceased did survive, and left the hospital on May 10, 1946. The envelope with the bank book was returned to him. The other envelopes he asked the respondent to keep for delivery after his death. The respondent did not open the envelope containing the memorandum until after his father died, at which time he delivered the other envelopes to the members of the family.

After the change into a trustee account various withdrawals were made upon the order of the deceased, the respondent assisting his father with certain of them. On July 6, 1946, the deceased returned to the hospital, and again turned over the savings account book to the respondent, who a week or two before his father died left it at the bank in accordance with the latter's request. At the date of death there was a balance of $6,016.56 in the account. On October 15, 1947, the respondent withdrew $6,000, which in good faith he paid in equal shares to his two sisters, intending to this extent to carry out the provisions of the memorandum.

At his death, the deceased owned United States savings bonds, Series G, in the amount of $9,100, purchased at various times, and issued in his name with designation "in the usual form" as payable on death to the respondent. The bonds were deposited in the Federal Reserve Bank of New York for safe keeping, and the deceased sent the receipts to the respondent. After the death the respondent obtained and cashed the bonds, causing the proceeds to be deposited in a bank in Fairhaven in a joint account with his wife, who knew the source of the deposit.

In addition to the foregoing the judge found: "The

deceased did not intend to transfer to James beneficial title to the savings account or to the bonds except as provided in the memorandum. He intended that the proceeds should be distributed in accordance with the memorandum. This memorandum was intended as a testamentary disposition, but was not lawfully executed as such. The deceased intended to maintain full control during his own lifetime."

The memorandum of April 22, 1946, was a testamentary document. It was in part as follows: "Dear Jim: The following is just how I want you to handle my affairs, in the event of my not surviving the coming operation. I have every confidence that you will carry out my wishes, knowing at the same time you will have to be tough with Tom and George. They failed me in an emergency . . . . I don't expect to leave enough to go to war about. . . . My wishes are being conveyed in sealed envelopes to be given to my wife, Lena, Ethel and yourself. If the Good Lord sees fit to bring me through the operation successfully Return all the sealed envelopes to me *unopened.* If I should not survive the operation, just give the envelopes to each member of the family, also to my wife, that is all I ask. I have tried to be fair to everyone who has been fair to me. . . . There is little sense in paying lawyers, etc. etc. and a few more etceteras. I have arranged with the bank to make you the beneficiary of my bank accounts. I am asking you to divide the money if any is left into four (4) equal parts, giving one part each to my wife, Lena, Ethel and yourself. The bonds, to be divided in the same ratio, one part each to my wife, Lena, Ethel and yourself dividing $9,200 Bonds into 4 parts. Now regarding the house, 75 Valentine St. owned originally by your Mother, I would want the house to be kept in the family . . . . My wife does not like the house . . . but in the event of my not surviving this operation please give her the privilege of living at 75 Valentine St. until she gets good and ready to move to a town or city of her liking. Also give her the privilege to move or take with her all of the furniture and accessories she moved here from Brooklyn. . . . All camera equipment to become your property, even

to the smallest detail . . . . The gold watch and chain . . .
to become the property of Ethel's son Peter, I know he will
treasure it. Having in mind that Thomas and George are
my sons, I bequeath one Dollar to each. This is all Jimmie.
[Sgd] Pa [Sgd] John Reynolds   Apr. 22/46."

The tangible personal property was never turned over
to the respondent, nor was the real estate, which stood in
the name of the deceased at the time of his death. The
respondent would be willing to carry out the terms of the
memorandum were it not for the fact that he has no control
over the division of the proceeds of the real estate.

The attempted testamentary disposition of the account
did not create a trust. *O'Hara* v. *O'Hara*, 291 Mass. 75, 77.
*Harrington* v. *Donlin*, 312 Mass. 577, 581. *National Shaw-
mut Bank* v. *Joy*, 315 Mass. 457, 470. See *Buteau* v. *La-
valle*, 284 Mass. 276, 278; Scott, Trusts, § 58.3; Bogert,
Trusts and Trustees, § 103.

The finding that the deceased did not intend to transfer
the beneficial title to the savings account except as provided
in the memorandum was not based on the other findings.
Nor is there anything in the other findings inconsistent
therewith or in any way requiring a conclusion that there
was an intention that a trust of the savings account should
take effect in favor of the respondent as sole beneficiary in
case the provisions of the memorandum could not be put
into effect to divide it into four parts. This is likewise true
of the statement in the memorandum: "I have arranged
with the bank to make you the beneficiary of my bank
accounts. I am asking you to divide the money if any is
left into four (4) equal parts." There was no error in the
decree as to the savings account. *Sherman* v. *New Bedford
Five Cents Savings Bank*, 138 Mass. 581, 583–584. *Nutt* v.
*Morse*, 142 Mass. 1. *Hogarth-Swann* v. *Steele*, 294 Mass.
396. Most of the contentions to the contrary are based
upon the misapprehension that enough appears to require
a conclusion that a present trust was created. See *Greeley*
v. *Flynn*, 310 Mass. 23; *Cohen* v. *Newton Savings Bank*,
320 Mass. 90.

The respondent is not aided by G. L. (Ter. Ed.) c. 168, § 34A, inserted by St. 1948, c. 75.

The question remains whether the decree was right in treating the proceeds of the bonds on the same footing as the savings account. The bonds, described in the reports of material facts merely as "United States Savings Bonds, Series G," were issued by authority of § 22 of the Second Liberty Bond Act, as amended, "subject to such terms and conditions . . . including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe." U. S. C. (1946 ed.) Title 31, § 757c (a). Treasury regulations have the force and effect of Federal law. *United States* v. *Sacks,* 257 U. S. 37. *In re Bartlett,* 71 Fed. Sup. 514, 515. *Schaffer* v. *Leimberg,* 318 Mass. 396, 400. *Murray* v. *Muldoon,* 236 Iowa, 807, 818–819. *Franklin Washington Trust Co.* v. *Beltram,* 133 N. J. Eq. 11, 13.

We summarize or quote the pertinent provisions, to which we are referred in the briefs. Treasury Regulations Department Circular No. 530, revised, 10 Fed. Reg. 1956. The bonds are issued only in registered form, must express the actual ownership and interest, and are nontransferable (§§ 315.2, 315.11). The type of bond here concerned may be registered "In the name of one (but not more than one) person, payable on death to one (but not more than one) other person," sometimes called "the beneficiary or designated beneficiary" (§ 315.4 [3]). Conflicting claims as to ownership between the registered owner and a designated beneficiary "will be recognized when established by valid judicial proceedings" except that "No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations . . . upon a surviving coowner or beneficiary" (§ 315.13). "If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue and is survived by the beneficiary, . . . the beneficiary will be recognized as the sole and absolute owner

of the bond, and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor" (§ 315.46 [c]). While Series G bonds may be registered in the name of a trustee as owner, they will not be issued so as to name as beneficiary one who is trustee (§§ 315.46 [b] [2], 315.5).

As the bonds in question were registered in the name of the decedent payable on death to the respondent, the legal title upon the death passed to the latter, who had the undoubted right to cash them. *Warren* v. *United States,* 68 Ct. Claims 634; (certiorari denied) 281 U. S. 739. *United States* v. *Dauphin Deposit Trust Co.* 50 Fed. Sup. 73. *Chambless* v. *Black,* 250 Ala. 604. *Myers* v. *Hardin,* 208 Ark. 505. *Conrad* v. *Conrad,* 66 Cal. App. (2d) 280. *Davies* v. *Beach,* 74 Cal. App. (2d) 304. *Meyer* v. *Mercier,* 102 Colo. 422. *Mason* v. *Briley,* 155 Fla. 798. *Murray* v. *Muldoon,* 236 Iowa, 807. *Succession of Tanner,* 24 So. (2d) 642 (La. App.). *Harvey* v. *Rackliffe,* 141 Maine, 169. *Stephens* v. *First National Bank,* 65 Nev. 352. *Reynolds* v. *Danko,* 134 N. J. Eq. 560. *Ervin* v. *Conn,* 225 N. C. 267. *Estate of DiSanto,* 142 Ohio St. 223. *Edds* v. *Mitchell,* 143 Texas, 307. See *Parkinson* v. *Wood,* 320 Mich. 143. We do not understand that the contrary is contended.

The precise issue presented is whether, after the United States has paid the named beneficiary, a State court can direct the distribution of the proceeds to other persons. The judge has found that the deceased did not intend to transfer title to the respondent except as provided in the memorandum. This, however, is immaterial, as by reason of the way in which the bonds were registered the deceased had done everything necessary to make a provision, good unless changed in accordance with the regulations, to transfer title to the respondent in a manner different from that stated in the memorandum. By the reasoning of many of the cases cited from other jurisdictions the purchaser of a bond acquires the right to have it paid in accordance with the regulations, and reciprocally he is bound to dispose of his claim against the United States only as therein

prescribed.   The naming of the beneficiary, who must be the person having the actual interest, must be treated as a conclusive statement of the owner's intent as to the legal and beneficial disposition of the bond.   By the same token, he has agreed not to name a trustee as beneficiary and to divest the beneficiary of his interest only in the manner set forth in the regulations.   This is not an abrogation of any State law relative to inheritance but is a recognition of the supremacy of the Federal law in a matter relating to the borrowing power.   It tends to lead to desirable uniformity in all States.

Certain early cases to the contrary are of little weight today.   *Sinift* v. *Sinift,* 229 Iowa, 56, 90, has been all but overruled.   *Murray* v. *Muldoon,* 236 Iowa, 807, 818–819. The rule laid down in *Deyo* v. *Adams,* 178 Misc. (N. Y.) 859, was promptly superseded by legislation.   *In re Huhn's Will,* 58 N. Y. Sup. (2d) 287, 288–289.   *Hart* v. *Hart,* 81 N. Y. Sup. (2d) 764.   *Estate of Deyo,* 180 Misc. (N. Y.) 32. *Decker* v. *Fowler,* 199 Wash. 549, no longer is law by virtue of legislation.   See *Ervin* v. *Conn,* 225 N. C. 267, 276.   See also *Makinen* v. *George,* 19 Wash. (2d) 340; 155 A. L. R. 174; 161 A. L. R. 305; 168 A. L. R. 245; 173 A. L. R. 550.

Nothing in our conclusion should hamper the courts in dealing with cases where property obtained by theft or fraud is invested by a wrongdoer in United States bonds. *Katz* v. *Driscoll,* 86 Cal. App. (2d) 313, 320, 321.   *Murray* v. *Muldoon,* 236 Iowa, 807, 822.   *Succession of Geagan,* 212 La. 574.   *Ibey* v. *Ibey,* 93 N. H. 434.   *Reynolds* v. *Danko,* 134 N. J. Eq. 560, 562.   *Estate of DiSanto,* 142 Ohio St. 223, 231.

On the petition by Loretta M. Reynolds, the decree dismissing the petition is affirmed.   On the petition by the administrator, the decree is modified by striking out all recitals negativing the respondent James E. Reynolds's right to the proceeds of the bonds, by striking out the order that the respondent James E. Reynolds pay over the proceeds thereof to the petitioner, and by providing instead

that the respondents rightfully hold such proceeds as owners subject to no trust, and, as so modified, the decree is affirmed.

*So ordered.*