Paul B. MORRISON, Individually and as Executor of the Estate of Emanuele Reale, Plaintiff,

v.

Pauline ALICANDRO, Defendant.

Civil Action No. 06–11542–JLT.

United States District Court, D. Massachusetts.

Jan. 11, 2007.

David W. Carr, Arlington, MA, for Plaintiff.

Jacob A. Labovitz, Conn Kavanaugh Rosenthal Peisch & Ford, LLP, Boston, MA, for Defendant.

## MEMORANDUM

TAURO, District Judge.

### I. Background

The Plaintiff, Mr. Paul B. Morrison ("Morrison"), is Executor of the Estate of Mr. Emanuele J. Reale ("Reale"). Defendant, Ms. Pauline Alicandro ("Alicandro"), is the registered, "payable on death" beneficiary of the United States Treasury Bonds owned by Reale, her late brother. Plaintiff sought declaratory judgment of ownership of these bonds in Middlesex County Probate Court. Defendant removed the case to this court. Now at issue is Defendant Alicandro's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted. The court will rely on the facts as stated in Plaintiff Morrison's complaint.[1]

In his Complaint, Morrison alleges the following: Reale purchased Series E Bonds from the United States Department of the Treasury on various occasions between 1975 and 1976. The cumulative face value of the bonds is $22,500. Reale designated his sister, Defendant Alicandro as the death beneficiary of the bonds. On or about May 11, 2001, Reale executed his Last Will and Testament which provided that his entire estate would be given to Morrison, a long-time friend. On or about May 14, 2001, Reale executed a United States Treasury form to change the beneficiary designation on the aforementioned bonds. Reale intended to designate Mor-

rison as the new beneficiary. Morrison does not allege that Alicandro provided consent to change her status as beneficiary. In his memorandum in opposition to the motion to dismiss, Plaintiff also alleges that Reale contacted Alicandro in order to get such consent, but that Alicandro "constructively" refused consent.

Morrison seeks a Declaratory Judgment from this court, assigning him ownership of the bonds free and clear of any pre-existing interest maintained by Alicandro.

### II. Discussion

When Reale first registered the bonds, he designated Alicandro as the beneficiary upon his death. This form of Series E Treasury Bond therefore, is known as a beneficiary bond.[2] Morrison alleges that Reale intended Morrison to be the beneficiary of the bonds upon his death. Morrison supports this allegation by suggesting that Reale listed him as beneficiary of all his worldly possessions, indicating as such in his Last Will and Testament. Morrison further states that Reale specifically manifested this intent regarding the bonds by executing a form with the United States Treasury. Accepting the allegations in the complaint as true, this court assumes that, though the bonds were registered with Alicandro as the beneficiary, Reale intended Morrison to be the ultimate recipient. But, as a matter of law, Reale's intent is not controlling.

To answer the question of ownership, this court must first determine which law to apply in cases relating to Treasury bonds. Although there is no First Circuit opinion directly on point, the Supreme

---

1. *See Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000).

2. 31 C.F.R. § 315.7(b)(3) (2006); *See also* 64 Am.Jur.2d *Public Securities and Obligations* § 245.

**4**

Court,[3] the Sixth Circuit Court of Appeals,[4] and the Massachusetts Supreme Judicial Court[5] have all concluded that federal law governs. This federal law is contained in voluminous Treasury Regulations that lay out specific rules for ownership and transfer of bonds. Congress has authorized the Treasury Department to regulate these bonds,[6] and its Regulations receive the force and effect of federal law.[7] This court, therefore, must look to the regulations to answer the question of ownership.

Treasury Regulations define how owners may obtain and transfer their interests in government securities. If a bond owner registers his securities with a named, payable on death beneficiary, that beneficiary has exclusive rights, immediately following proof of the owner's death.[8] At that point, the bonds become absolute property of the beneficiary.[9]

■ As the regulations make clear, Reale's intent is irrelevant. Only under specific circumstances can an owner reissue a privately held bond with a different named beneficiary.[10] In the case of Series

E bonds, the regulations require "certified consent" from the current beneficiary before the bond holder can remove that beneficiary.[11] The form executed by Reale specifically notes this consent requirement.[12] This requirement means Reale's executed will is insufficient to change Alicandro's status as beneficiary.[13] The only exception to this consent requirement involves cases of fraud.[14] In the present case, Morrison has not alleged fraud of any kind.[15] Without the consent of the beneficiary or an allegation of fraud, Treasury Regulations clearly indicate that Reale's intent is not controlling.

Morrison presents two counter-arguments. First, in his Complaint, Morrison states that by filling out the Treasury form, Reale as registered owner, "presented or attempted to present and surrendered or attempted to surrender the bonds at issue to the Treasury Department in accordance with regulations."[16] This court interprets the above statement as an argument that Reale constructively cashed in his bonds, or sufficiently manifested that intent. Such an argument misreads the Treasury Regulations governing sur-

3. *Yiatchos v. Yiatchos*, 376 U.S. 306, 309, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964) ("[S]urvivorship provisions of the federal regulations must control, preempting, if necessary, inconsistent state law which interferes with the legitimate exercise of the Federal Government's power to borrow money.").

4. *Guldager v. United States*, 204 F.2d 487, 489 (6th Cir.1953) ("The capacity of the Federal government to borrow money depends on the inviolability of its obligation, on its ability to carry it out strictly in accordance with its terms. Because of the supremacy of Federal law a state rule has no application to this contract.").

5. *Reynolds v. Reynolds*, 325 Mass. 257, 90 N.E.2d 338, 341 (1950) ("Treasury regulations have the force and effect of Federal law.").

6. 31 U.S.C. § 3105(c) (2006).

7. *Reynolds*, 90 N.E.2d at 341.

8. 31 C.F.R. § 315.70(c)(1) (2006).

9. *Id.*

10. 31 C.F.R. § 315.47(c)(3) (2006).

11. *Id.*

12. Def. Mem. in Supp. of Mot. to Dismiss, Paper # 7, Ex. A.

13. *See also* 64 Am.Jur.2d *Public Securities and Obligations* § 245 (2006).

14. *Yiatchos*, 376 U.S. at 309, 84 S.Ct. 742.

15. *See generally* Compl., Paper # 5.

16. Compl. ¶ 14.

render of bonds. In general, an owner can execute surrender or payment of his or her bonds.[17] Reale had discretion to surrender, or "cash in" his bonds, during his lifetime.[18] Even with beneficiary bonds, a registered owner can surrender the securities, take the proceeds and leave the designated beneficiary with no legal interest.[19] This "surrender with an appropriate request," requires the owner to present the bonds to an "authorized paying agent" for surrender and sufficiently establish his or her identity to the agent.[20] The agent then, in most cases, pays the owner the value of his securities immediately, with no further bureaucratic navigation.[21] In certain cases, the agent may require the owner to present his Social Security Number or forward the bonds to the Federal Reserve.[22] Nevertheless, the redemption option is readily available and is not complicated.

Morrison's argument that execution of the (incomplete) beneficiary form is tantamount to a surrender of the bonds is unsupported by law. There is nothing to suggest that Reale's execution of the reissuance form was an appropriate request for payment.[23] Morrison makes this claim in his complaint without citing any case law or federal regulations. Though the regulations allowed Reale to cash in his bonds, he did not. By keeping the bonds in beneficiary form, he subjected them to distribution and adjudication according to the relevant federal regulations.

Secondly, in his Opposition to the Motion to Dismiss, Morrison poses the questions of whether Reale may have been able to assert an equitable claim against Alicandro to compel her consent to the beneficiary change. Morrison argues that as Executor, he would inherit that right to relief. For the same reasons described above, this court determines that the regulations leave no room for an equitable remedy. The regulations specifically provide that savings bonds are "payable only to the owners named on the bonds, except as specifically provided in these regulations and then only in the manner and to the extent so provided."[24] The regulations also provide that the beneficiary's consent is required to remove that beneficiary.[25] Such a consent requirement would be meaningless, if the beneficiary is not free to withhold consent.[26] By creating this requirement and providing that transfer and reissue be accomplished in accordance with applicable regulations, federal law

17. 31 C.F.R. § 315.39(a) (2006).

18. *Id.*

19. 31 C.F.R. § 315.38 (2006).

20. *Id.*

21. *Id.*

22. *Id.*

23. Morrison makes no reference in his Complaint to any specific correspondence with the Treasury Department beyond the incomplete Change of Beneficiary form. Five years passed between attempted execution of the beneficiary change and Reale's death. Reale and his attorney could have sought evidence that his intent was fulfilled. Reale could have inquired after the status of the bonds or surrendered them himself.

24. 31 C.F.R. § 315.15 (2006).

25. 31 C.F.R. § 315.47(c)(4) (2006).

26. Morrison suggests that Alicandro "constructively" withheld consent in his Memorandum in Opposition. Nevertheless, this allegation is also immaterial. The relevant Treasury Regulations do not place limitations on a beneficiary's power of consent. Under this court's reading of these regulations, the beneficiary is free to withhold consent to a change of her status. The Treasury Department specifically required Alicandro's consent for her name to be removed. Without that consent, her status remains unaltered.

forecloses an equitable remedy in this instance.

Not all equitable remedies are precluded by the regulations.[27] Where both parties agree to a disposition of the bonds, the regulations do not prevent a court from enforcing that agreement by imposing a constructive trust on the bonds or their proceeds.[28] In this case, however, the complaint does not state a claim for imposing such a trust. There has been no fraud or agreement that would undermine Alicandro's rights in the bonds. Morrison only alleges that Alicandro failed to provide consent for her removal as beneficiary of the bonds. Morrison does not put forth any precedent to support the existence of an equitable remedy for this failure to consent. In fact, all precedent seems to agree that any claim of ownership in the bonds must be made pursuant to the relevant federal regulations. Imposing a constructive trust would construe and enforce an obligation to consent that never existed. Additionally, by taking such equitable action, this court would frustrate the regulations that clearly give Alicandro a right to consent, or not consent, to a change in her status. Any equitable remedy that reversed this consent requirement would be inconsistent with federal law and would be preempted.[29]

### III. Conclusion

Based on the relevant United States Treasury Regulations and the arguments presented by the parties, Alicandro's *Motion to Dismiss,* is ALLOWED.

AN ORDER WILL ISSUE.

---

27. *See* 64 Am.Jur.2d *Enforcement of Equitable Obligations* § 247.

28. *Id.*

29. *See* 31 C.F.R. 315.20(a) (2006).