JOHN DEJONG et al., Appellees, v. CORNELIA HUYSER, Appellant.

No. 46318.

1316

NOVEMBER 16, 1943.

H. E. deReus, of Knoxville, and Donald H. Klein, of Pella, for appellant.

Johnson & Johnson, of Knoxville, for appellees.

MILLER, J.—K. P. DeJong, the father of plaintiffs herein, married Tryntje Ver Steeg on April 16, 1936. He was then seventy-three years old; she was seventy-one. Twelve days later, on April 28, 1936, DeJong and his wife, Tryntje, executed a joint will, the material portions of which provide as follows:

"Article One. We intermarried on the sixteenth day of April, A. D. 1936, and prior to such intermarriage agreed each with the other, and do hereby agree each with the other, that in case K. P. DeJong predeceases his wife, Tryntje DeJong, that during her widowhood she shall receive from the estate of K. P. DeJong annually the sum of One Hundred ($100.00) Dollars, and at her death she shall be buried at the expense and charge of the estate of K. P. DeJong, and whatever property may remain thereafter, either real or personal, shall be divided amongst the children of K. P. DeJong, or their heirs *per stirpes.*

"Article Two. We agreed prior to our intermarriage and do hereby agree that upon the death of Tryntje DeJong that K. P. DeJong shall receive all her property, real and personal, including any property, real and/or personal, that the said Tryntje

DeJong may now own or hereafter inherit, and in the event that the said Tryntje DeJong survives her husband, K. P. DeJong, then her estate shall be divided equally amongst the children of said K. P. DeJong *per stirpes.*"

At the time of this marriage DeJong was an inmate of a home for the aged at Pella. Tryntje came to live with him there as his wife. Defendant Cornelia Huyser, sister of Tryntje, also lived at this home for the aged from and after February 24, 1936. DeJong had been married before and plaintiffs are children by such prior marriage. Tryntje had also been married before. She inherited from her first husband $1,000 and from her second husband a house and lot in Sully, Iowa, which is involved herein. She had no children. Cornelia, her sister, is her only close relative. The fee for Tryntje's admission into the home for the aged was $1,300. She paid the $1,000 that she had inherited from her first husband and Cornelia paid the balance of $300. DeJong's only property consisted of a contract for the sale of real estate to his son Frans, made in 1934, by reason of which Frans was obligated to pay him $150 per year during his lifetime, and, if he left a widow surviving him, Frans was to pay her $100 per year for the remainder of her lifetime. As above shown, the joint will refers to the marriage and to an antenuptial agreement which is reaffirmed in the will.

DeJong died September 8, 1938. The joint will was admitted to probate as his will. Tryntje survived him and was paid $100 per year thereafter by Frans. She made no claim to any additional allowance under the joint will.

On December 12, 1939, Tryntje executed a warranty deed of the house and lot in Sully to Cornelia, reserving to herself as grantor a life estate therein. The deed was recorded December 16, 1939. No present consideration was paid for the deed. In addition to the $300 paid by Cornelia when Tryntje entered the home, there was evidence that Cornelia gave Tryntje $100 which was used to purchase a postal-savings certificate in the name of DeJong and which was administered upon as an asset of his estate. There was also evidence that Tryntje and her then husband, Jacob Ver Steeg, lived with Cornelia for about eight months in 1935, immediately prior to Ver Steeg's death. The record is silent as to whether Tryntje or her husband paid any-

1318

thing for their living expenses at that time. Evidence was offered to show that Tryntje deeded the property to Cornelia because of what Cornelia had done for her.

Tryntje died October 3, 1941. The balance in the K. P. DeJong estate was $122.45. This was applied upon her funeral expenses. The record indicates that there was a balance above such sum but is silent as to the amount thereof, whether paid, and if so, by whom. The value of the house and lot in Sully is shown to be from $1,000 to $1,200. The joint will was admitted to probate as the will of Tryntje DeJong.

Plaintiffs commenced this action in equity, asserting: the deed from Tryntje to Cornelia was executed to defeat the provisions of the joint will; the will is based upon a contract; K. P. DeJong performed his part of the contract and Tryntje was obligated to perform her part; defendant, Cornelia Huyser, is not a bona fide purchaser of the real estate and stands in the shoes of her grantor; Cornelia holds the real estate in trust for plaintiffs; plaintiffs are entitled to specific performance of the contract by Cornelia as successor to the interest of Tryntje. Plaintiffs prayed that the court declare that defendant holds the real estate in trust for plaintiffs, that Cornelia be required to convey the property to plaintiffs and to account for the income received therefrom, and for general equitable relief.

Defendant's answer admitted that plaintiffs are the children of K. P. DeJong; that the joint will was executed and later admitted to probate as the will of each testator; that the estate of Tryntje is solvent; that Tryntje was defendant's sister and conveyed the real estate to defendant; and asserted that as such grantee defendant is the absolute owner of same. Other allegations of the petition were denied. The prayer was that the action be dismissed.

Trial was had at which evidence of the facts above stated was introduced. Some additional evidence, taken subject to objection, will be referred to later. The trial court made written findings of fact and conclusions of law, which were later incorporated into the decree by reference. The court determined that it was understood by the parties that the $100 that Tryntje was to receive annually, should she survive her husband, was the $100 payable annually under the contract with Frans; that same was

paid to her and her funeral expenses were paid insofar as the assets of DeJong's estate permitted. The court further determined that the will should be interpreted to the effect that the property that was to go to the children of DeJong should Tryntje be the survivor (described as "her estate") was intended by the two testators to be the same property described as going to K. P. DeJong should he outlive her; that she received the benefits of the joint will, according to its terms, insofar as the assets of the estate permitted and that the will constituted such a contractual relation as to prevent her transferring her property after the death of K. P. DeJong; the transfer to Cornelia Huyser was not made for such a consideration as to constitute her an innocent purchaser for value and she must be deemed to hold said property in trust for the children of K. P. DeJong, under the terms of the joint will.

Pursuant to the foregoing findings a decree was entered adjudging that Cornelia Huyser holds the house and lot in Sully and its income in trust for plaintiffs; she was ordered to execute quitclaim deed for said real estate, and, failing so to do, the decree shall have the same force and effect of such deed; she was also ordered to account for the income thereof accruing since October 3, 1941, and to pay the costs. Defendant Cornelia Huyser appeals to this court.

I. Defendant contended that the joint will is ambiguous and produced the scrivener, who testified that, at the time the will was executed, Mrs. DeJong stated her intention as follows:

"Q. In event that she survived him, what property was to pass to his children? Mr. Johnson: Objected to as calling for the conclusion and opinion of the witness, and seeking to vary the terms of a written will which needs no interpretation. (Taken subject to objection. Exceptions saved.) A. Only that which was remaining after her death. She made this particular mention, 'I might get sick. I might need an operation., I want to keep to myself everything that I have got, so that I can do with it what I want, and only that which is left after my death is to be my estate and that is to go to my husband or his children *per stirpes*.' She didn't say *'per stirpes'* but that is what the import was.''

Disregarding the fact that this testimony is in direct conflict with the explicit language of the will as to the property that was to go to K. P. DeJong should he survive Tryntje, it definitely states that Tryntje had in mind that the property that was to go to her husband's children was the same property that was to go to him should he survive her. The property of Tryntje that the parties had in mind was the house and lot in Sully. The court was right in holding that the parties had no different intention as to the property that was to go to the children from that which was to go to Tryntje's husband should he be the survivor.

II. The court was also right in holding that the joint will constituted a contractual relation which prevented Tryntje's transferring her real estate by the deed to Cornelia after the death of K. P. DeJong. We have held repeatedly that in a joint will there is a contractual relation which becomes irrevocable after one of the testators dies and the other accepts benefits thereunder.

In Baker v. Syfritt, 147 Iowa 49, 56, 125 N. W. 998, 1001, we state:

"Now it is evident that where two persons unite in a joint will, whereby the survivor takes some benefit from the estate of the one first deceased, and such provision is coupled with another by which, subject to such right in the survivor, the estate of both is devised to a third person, there is an element of contract and mutual obligation between the makers * * * where one maker of such will dies before a revocation thereof by either, and the survivor accepts any benefit thereunder, we think it quite clear that he can no longer revoke, and that any attempt by him to divert the common estate in any other direction than is indicated by the common or joint devise is nugatory."

In Campbell v. Dunkelberger, 172 Iowa 385, 389, 153 N. W. 56, 58, we state:

"In order that either party be denied the right to revoke such wills, it must appear by clear and satisfactory evidence or on the face of the wills that these were executed in pursuance of a contract or compact between the parties, each in consideration of the other; but even then either party may revoke during the lifetime of both, provided the other have notice of the intention

of the revocation. After the death of one of the parties, however, if the survivor takes advantage of or accepts the provisions made for the other, it would seem that the survivor may not dispose of his property otherwise than according to the terms of the will.''

Here the joint will was obviously made pursuant to a contract. The contract is expressly recited and reaffirmed. The court found that the $100 per year which Tryntje received from Frans was the $100 per year provided for in the contract of the parties. The evidence clearly sustains such finding. Defendant contends that Frans was obligated to pay said sum independent of the will. This contention overlooks the fact that the contract, which the will effectuates, was an antenuptial one. Pursuant to that contract Tryntje became DeJong's wife, later his widow, and thereby qualified to receive the $100 per year from Frans. In such a situation, having received the benefits of the contract, after her husband's death, she could not revoke the joint will and make a new testamentary disposition of her property.

 The deed to Cornelia, reserving a life estate, was obviously intended to produce the same result that would have been accomplished by a new will. It was in reality of a testamentary character. In the Restatement of the Law, Trusts, 156, comment a, to section 53, commences as follows:

''A testamentary disposition of property is a disposition to take effect upon the death of the person making the disposition and as to which he has substantially entire control until his death. Such a disposition is testamentary whether made by a will or a document which purports to be a will or made by a transaction inter vivos, as by a deed, unsealed writing or parol declaration or transfer.''

Not only was this deed of a testamentary character but its purpose was to defeat the contract embodied in the joint will.

In an annotation in 108 A. L. R. 870, the editor states:

''However, even if under a joint will of husband and wife the survivor has a right to dispose of the property embraced therein, it has been held that he may do so only in good faith, and not merely for the purpose of defeating the contract of the parties. * * * Of this type of dispositions which the courts will

not sustain are those which are in reality of a testamentary character.''

In the case of Bower v. Daniel, 198 Mo. 289, 321, 328, 95 S. W. 347, 357, 359, the court states:

''If the survivor executed voluntary deeds to the property, with the object of defeating the provisions of the joint will with respect to his own obligations, reserving to himself a life estate, such deeds are void as to the devisees under the will. * * * Conceding the joint will as embracing only such property as each, the husband and wife, had at the time of his or her death, and that the testator might have thereafter sold and disposed of his property in good faith, or 'given it away,' as said in Van Duyne v. Vreeland, supra, under the authorities cited, it was a fraud in fact and in law for him to convey it to others, voluntarily and without consideration, reserving to himself a life estate, and in this way make a disposition of his property, both by deed and by will, different from that for which he contracted with his wife in the joint will. There can be no question, we think, that the testator executed those voluntary conveyances and made the subsequent will for the purpose of defeating the joint will, which acts were, in our opinion, ineffective for that purpose.''

In the case of Rastetter v. Hoenninger, 214 N. Y. 66, 74, 108 N. E. 210, 212, the court states:

''The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement.''

Under the authorities above quoted, where one party to a joint will becomes the survivor and accepts benefits as such, he cannot revoke the will, nor can he make a disposition of his property by deed, with reservation of a life estate, in lieu of a testamentary disposition, to defeat the purpose of the agreement. Here the property that the parties contemplated going to K. P. DeJong or his children after the death of Tryntje was the real estate conveyed to Cornelia. The conveyance thereof with reservation of a life estate would accomplish the same result that revocation of the will and execution of a new will would ac-

complish. The conveyance was executed to defeat the purpose of the joint will. It was fraudulent as to plaintiffs herein.

III. The court was right in holding that the consideration for the deed did not constitute Cornelia an innocent purchaser for value. No present consideration was paid. Cornelia admitted this on the stand. Asked concerning the consideration for the deed, she testified that Tryntje said "she gave it to her because she did so much for her already." There was evidence introduced by plaintiffs to the effect that what Cornelia had done for Tryntje was gratuitous and that Tryntje did not consider herself indebted to Cornelia. There was also evidence offered by defendant that Tryntje considered herself indebted to Cornelia. Much of the evidence on both sides was objected to. Some of it appears to be incompetent. On the whole, however, we think that Cornelia took the deed subject to the equities in favor of plaintiffs.

In the case of Lillibridge v. Allen, 100 Iowa 582, 585, 586, 69 N. W. 1031, 1032, we state:

"Enough has been shown to establish a case of fraud, which fully justified the decree of the district court. We do not think the grantee and defendant, Jennie L. Allen, took her deed in ignorance of all of the facts. Her relationship with the defendant, the fact that no account was kept of the wages for which it is claimed this deed was executed, though the grantee was in the employ of the grantor, and other facts, convince us that she was cognizant of all the facts relating to the value of the lots, and a willing party aiding in the perpetration of the fraud. If, however, we should be mistaken as to that, still, under the law, she is not a *bona fide* purchaser. Whatever her rights may be as against her immediate grantor, it is clear that she did not acquire an interest in this land superior to plaintiff's claim thereon. She parted with no security, she surrendered no evidence of the debt, and parted with nothing of value. The entire consideration, if any, was the payment of this antecedent debt, due for wages for services rendered her brother. A holder of a conveyance under such circumstances, takes the interest conveyed subject to prior equities attaching to the land. 2 Devlin, Deeds, pt. 815, note 1; Sillyman v. King, 36 Iowa, 207 ; Throckmorton v. Rider, 42 Iowa,

85; Light v. West, 42 Iowa, 141; Anderson v. Buck, 66 Iowa, 496 (24 N. W. Rep. 10); Bump, Fraud. Conv., p. 493.''

The rule that is recognized and applied in the foregoing pronouncement was applied by the trial court herein. There was no error in so doing.

■ IV. Defendant contends that there was a failure of consideration which precludes enforcement of the contract embodied in the joint will. We find no merit in the contention. The contention overlooks the fact that the contract was an antenuptial one. That fact alone constituted adequate consideration. In re Estate of Onstot, 224 Iowa 520, 525, 526, 277 N. W. 563, and cases cited therein. Insofar as the marriage supported the contract there was no failure of consideration. It is contended that the estate cannot claim the benefit of the $100 per year paid by Frans. We have heretofore answered such contention. Complaint is made that Tryntje's funeral expenses were not paid in full by DeJong's estate. The balance on hand of $122.45 was applied thereon. No claim is made that any money in the estate was withheld that should have been so applied. The balance unpaid, if any, is not shown. The court held that performance of the obligations of the will to the full extent of the assets of the estate was sufficient to enforce the will against defendant herein. We agree with the trial court.

■ V. It is contended that specific performance of a real-estate contract is not an absolute right but is granted or denied in the exercise of a sound judicial discretion and that a trust can be established only where the evidence is clear, satisfactory, and convincing. Such is the law. But the plaintiffs are entitled to relief herein under such rules.

The decree is—Affirmed.

All JUSTICES concur.