EDNA HILL et al., appellants, v. EVA HAVENS et al., appellees.

No. 47824.

(Reported in 48 N.W.2d 870)

July 10, 1951.

Stuart & Stuart, of Chariton, for appellants.

Guernsey & Powers, of Centerville, for appellees.

Thompson, J.—The plaintiff, Edna Hill, is an adopted daughter of W. H. Havens, and the other plaintiffs are children of Nelson Havens, a deceased adopted son of W. H. Havens. W. H. Havens died on October 26, 1948, a resident of Appanoose County, Iowa. The defendant is his surviving widow. Both W. H. Havens and Eva Havens, the defendant, had been married before their union with each other, and Edna Hill and Nelson Havens had been adopted by W. H. Havens and his first wife. Defendant has a daughter, Doris Zimmer, by her previous marriage. W. H. Havens and Eva Havens were married on January 11, 1933, and no children were born to them. They lived together until the death of W. H. Havens.

Prior to September 17, 1947, W. H. Havens had for some time carried an account in the Centerville National Bank. On that date he changed the account so that it thereafter and until the time of his death stood in the name of himself and Eva Havens. He did this by signing, and procuring his wife's signature to, a signature card, which was filed with the bank, and upon the back of which appears this:

"Joint Account—Payable to Either or Survivor.

"We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and

owned by us as joint tenants with right of survivorship,. and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

"It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, legatees, assigns and personal representatives.

(Signed) "W. H. Havens

(Signed) "Mrs. Eva Havens."

It is interesting to note that this card is identical in all respects, except for the signatures, with the one with which we were concerned in McManis v. Keokuk Savings Bank & Trust Co., 239 Iowa 1105, 33 N.W.2d 410. At the time of the death of W. H. Havens there was in this account the sum of $1211.40, which is claimed by Eva Havens as her property.

On January 9, 1948, W. H. Havens, knowing himself to be afflicted with an incurable disease, made a will, which will be set out in full later herein. Prior to the time of making the will he had from time to time purchased United States Government bonds in the face value amount of $4800, which were worth about $3900 at the time of his death. Most of these were made out to W. H. Havens or Eva Havens, although a few, both in number and amount, were made to W. H. Havens, payable on death to Eva Havens.

W. H. Havens had been the owner of a sixty-acre farm which he had sold in the autumn of 1947. The final payment on this tract was made on March 1, 1948, in the sum of $6800. Of this, W. H. Havens used $6000 to purchase further United States Government Series E bonds on March 2, 1948; and these he also directed to be issued to W. H. Havens or Eva Havens. At the time of his death these bonds, including both those purchased before the making of the will and those bought afterward, were of an actual value of $9678. It is these bonds and the bank account above referred to which are the subject of this controversy.

For some time before his death W. H. Havens had owned a ten-acre tract, upon which was a house used as the homestead of himself and his wife, in the town of Mystic. However, about the

month of April 1948 he sold something over nine acres, not including the house, the final payment on this contract coming shortly before his death in the sum of about $700, and being deposited in the account in the Centerville National Bank. He had very little other property, except for household goods. The net amount of his estate, if the bank account and the actual value of the bonds are included, would not exceed $11,000. Excluding the account and the bonds, and, of course, the furniture and the homestead which were specifically given to his widow (the defendant) by his will, his estate totalled slightly over $700; an amount insufficient to pay debts and costs of administration.

The will above referred to is herewith set out:

"I, W. H. Havens, of Mystic, Appanoose County, State of Iowa, being of sound and disposing mind and memory, do hereby make, publish and declare this My Last Will and Testament, hereby revoking and making null and void all other Wills and Testaments by me heretofore made. All property real, personal or mixed, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I give, devise, bequeath and dispose of in the manner following, to-wit:

### Par. I

"My will is that all my just debts and funeral expenses shall first be paid out of my estate by my Executrix.

### Par. II

"I give, devise and bequeath to my wife, Eva Havens, my homestead in Mystic, Iowa, consisting of ten acres of real estate, more particularly described as follows: North One-half of the South One-half of the Northeast Quarter of the Southeast Quarter of Section Eight, Township Sixty-nine North, Range Eighteen West of the 5th P. M. in Appanoose County, Iowa, except coal and right to mine and remove the same.

### Par. III

"I give, devise and bequeath to my wife, Eva Havens, all household furniture, furnishings and utensils.

### Par. IV

"All the rest and residue of my estate which I may own at the time of my death, I give, devise and bequeath to the following named persons and in the following shares: to my wife, Eva

Havens, a one-fourth (¼) share; to Edna Hill of Bloomfield, Iowa, a one-fourth (¼) share; to my grandchild, W. H. Havens of Mystic, Iowa, a one-twelfth (¹⁄₁₂) share; to my grandchild, Virginia Havens, of Mystic, Iowa, a one-twelfth (¹⁄₁₂) share; to my grandchild, Robert Havens of Mystic, Iowa, a one-twelfth (¹⁄₁₂) share and to Doris Zimmer of Rock Island, Illinois, a one-fourth (¼) share.

PAR. V

"I do hereby nominate and appoint my wife, Eva Havens, to be the executrix of this my Last Will and Testament and I do excuse her from furnishing a bond.

"IN TESTIMONY WHEREOF, I, the said W. H. Havens, has subscribed my name this 9th day of January, 1948.

(Signed)   "W. H. HAVENS."

Plaintiffs' petition alleges the making of the will; that all of the money deposited in the bank account was the property of W. H. Havens; that he furnished all of the consideration for the purchase of the bonds, and that his estate was otherwise insufficient to pay debts and costs of administration, so that there was nothing upon which Paragraph IV of the will, the residuary clause, might operate. It is therefore alleged that it was not the intent of W. H. Havens to create a joint tenancy in the bonds or bank account, but that the circumstances effect a resulting trust in his estate therein.

By way of answer, defendant alleges that there was a completed gift to her of the personalty in controversy; that the bonds and money in the bank account were earned by the joint efforts of W. H. Havens and defendant, and that it was the clear expressed intent of W. H. Havens to set up a joint tenancy in the bank account and to make Eva Havens a co-owner or beneficiary of the bonds so that the absolute ownership would pass to her at his death. Evidence was taken upon the trial, much of it subject to objection; but since we are of the opinion that the case must be decided by well-established legal principles, we shall not delve deep into questions of admissibility, except in respect to the one evidentiary question discussed in Division II following.

I.   It is plaintiffs' primary contention that, their action being in equity to establish a resulting trust, our holdings in In re

Estate of Murdoch, 238 Iowa 898, 29 N.W.2d 177, McManis v. Keokuk Sav. Bk. & Tr. Co., supra, and In re Estate of Murray, 236 Iowa 807, 20 N.W.2d 49, are not in point. With ingenuity deserving of a better fate, the able counsel who represent plaintiffs contend that those cases concern only legal titles, having been tried at law or in probate. Therefore, they say, the question of the real intent of W. H. Havens in setting up the bank deposit and in purchasing the bonds as he did is vital; and in the light of the determinations in Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841, O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412, and other earlier cases, evidence bearing upon that intent is proper and admissible. It follows, of course, that they contend that the evidence which they did produce upon this question was ample to swing the balance to their side of the scales, and that they are entitled to prevail because they have shown by the proper quantum of proof that W. II. Havens did not intend to make a valid and binding gift, contract or joint tenancy; that, Eva Havens having furnished no part of the money going into the joint account or for the purchase of the bonds, a trust results in favor of W. H. Havens (now his estate), and that the trial court was in error in failing to so hold.

For reasons hereinafter set out we cannot agree that the question of intent was an open one in this case; but we also think that, even if it were, the plaintiffs failed to carry the burden of proof requisite to establish their case. They rely upon the will, plus the testimony of Charles L. Johnston, the attorney who drew it. It is true, of course, that there was little or nothing upon which the residuary clause of the will might operate unless the bank account and bonds are included in the estate. Yet the will was essential if Eva Havens was to receive the homestead and furniture, and few wills are drawn without residuary provisions. Also, it must be pointed out that at the time the will was executed there was in the estate a substantial item—the balance of the sale price of the farm, then unpaid in the sum of $6800. When this was paid, almost two months later, the testator promptly put most of it in bonds made payable, by his direction, to himself or Eva Havens. Whether he never intended to include this sum in the will or whether he decided later to proceed as he did

is not material. Mr. Johnston's testimony goes no further than that Mr. Havens told him how he wanted the will drawn, and that "he told me that after his wife got the home and the contents, that all the property remaining he wanted divided up into four shares; he wanted his wife to have a one-fourth share, he wanted his stepdaughter to have a one-fourth share, and he wanted, I think Edna Hill, the adopted daughter, to have a one-fourth share, and then there was an adopted son who was deceased, who had three children, and he wanted the other one-fourth share divided equally between those three grandchildren."

██ ██ Upon this foundation the plaintiffs build their argument. They were under a duty—if their evidence were admissible at all—to prove the existence of the resulting trust by clear, convincing and satisfactory evidence. Shaw v. Addison, 239 Iowa 377, 384, 28 N.W.2d 816; Sinclair v. Allender, 238 Iowa 212, 26 N.W.2d 320. There is a good deal of evidence adduced by the defendant which is strongly contradictory of the thought that W. H. Havens did not intend that his wife should have the bank account and bonds upon his death. Several witnesses testify to his direct statements that he had done about all he could for the children and wanted his wife to have the property when he was gone. A challenge to the competency of this testimony was interposed; but, as the able trial court pointed out in his thorough and well-reasoned opinion, it was surely admissible if plaintiffs' evidence on the same point was so. Because we think, as indicated above, that the intent of W. H. Havens was not a proper subject for inquiry in this manner, we shall say only that a review of the evidence indicates clearly that plaintiffs must have failed to establish a resulting trust by the prescribed measure of proof, even if permitted to attempt to do so.

II.   We have said that counsel's attempt to avoid the effect of the Murdoch, McManis, and Murray cases, all supra, is ingenious, but not sound. They rely heavily upon Sinift v. Sinift and O'Brien v. Biegger, both supra, and some expressions in In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153, and in the Murray case. It is pointed out that the Sinift and O'Brien cases were in equity, and that we there held the question of intent to be controlling; and that there are expressions in the Winkler and

Murray cases which indicate the holdings therein made might not apply in equity.

Before proceeding to analyze these cases it should be made clear that in the case at bar there is no request for a reformation, nor is there any allegation of fraud, deceit, duress or mistake. The case as made by the pleadings must stand or fall upon the question of a resulting trust.

Sinift v. Sinift, supra, was decided in 1940. At that time this court had not adopted the "contract" theory in cases involving claimed joint tenancies in bank deposits. The decision seems to have turned largely upon the question of whether there was proven an intention to make a gift inter vivos, and it was held that no such intent was shown. As to the United States bonds, the treasury regulations then in force were somewhat different and did not go as far in establishing ownership in the survivor of two co-owners as the later ones which were considered in the Murray case and which are in force today.

Considering further the cases which deal with bank deposits, we come in chronological order to In re Estate of Winkler, supra. This was determined in 1942. It took another step toward the logical goal which these cases have finally reached. Here there was a signature card much like the one with which we are dealing in the instant case. It set up a clear joint tenancy. It was held that a joint tenancy was created and that the survivor took the account. There is again some discussion of the "completed gift" theory; and the question of intent was thought to be important, for the court said at page 938 of 232 Iowa, page 157 of 5 N.W.2d: "The facts in this case also differ from many of the reported cases in that in such cases evidence was offered other than the mere instrument in question, in most cases on the question of intent. The intention of the parties is the controlling question, as stated in the Sinift case."

Next came O'Brien v. Biegger, supra, decided in 1943. The opinion was written in this case, as in Sinift v. Sinift, by Justice Bliss. There was no signature card involved in this case which purported by its terms to create a joint tenancy. An account was opened in the names of "Mrs. G. A. Biegger or G. A. Biegger." The issue in the case was whether a joint tenancy was thereby

created. Properly, it was held that, the contract being not clearly expressed, extraneous evidence was admissible to determine the intent of the depositor. It was Mrs. Biegger who had furnished the money, and the contest was between her administrator and her surviving husband, G. A. Biegger. Here, we definitely adopted the theory that the deposit and the signature card constitute a contract between the depositor and the bank; a contract which may, if so worded, create a joint tenancy in the account with a third party; one who may furnish none of the funds deposited, but to whom the bank is bound by its agreement to pay upon the happening of the stipulated condition—either the signing of an order (a check) upon the bank, or the death of the other party. We said at page 1196 of 233 Iowa, page 420 of 11 N.W.2d:

"The question is again put directly to the court in this case. We think it should be answered, and answered in the affirmative, that is, that the deposit made by the appellee in account No. 807 was not only consideration for paying him, but was also consideration for paying Mrs. Biegger, and that the deposit by Mrs. Biegger in account No. 1217 was consideration for the bank's agreement to pay either her or her husband or the survivor. The making of these deposits created a debtor-creditor relation between the bank and the Bieggers. They loaned the money to the bank on the promise that it would repay them or either of them, with interest. Two contracts were thus made, fully supported by consideration."

The opinion also quoted, with approval, from In re Edwards' Estate, 140 Or. 431, 440, 14 P.2d 274, 277, and from Chippendale v. North Adams Sav. Bk., 222 Mass. 499, 501, 111 N.E. 371, 373. The latter quotation is so clearly phrased and so cogent that we call special attention to it again.

The O'Brien case was in equity, and intent was held material; but it does not aid plaintiffs here because the deposit agreement was meager and ambiguous.

In 1947 came In re Estate of Murdoch, supra, an important decision in clarifying the law applying to joint bank deposits. Here, speaking through Justice Hays, this court reviewed the previous holdings in Taylor v. Grimes, 223 Iowa 821, 273 N.W.

898, and Sinift v. Sinift, O'Brien v. Biegger, and In re Estate of Winkler, all supra. Taylor v. Grimes and the Sinift case were distinguished upon the ground that there was in neither of them a written agreement with the bank fixing the rights of the parties. We think it should also be pointed out again that we had not, at the time of the decision of these cases, clearly adopted the contract and joint-tenancy theory. We have also said that this was done in O'Brien v. Biegger, and that this case differs from the one at bar because therein was no agreement in writing creating a joint tenancy. This was pointed out by Justice Hays in the Murdoch estate case. The agreement in the Murdoch case was similar in legal meaning to that in the Winkler estate case, supra. The Winkler case held that the signature card constituted a contract (thereby laying a basis for the more inclusive pronouncement in O'Brien v. Biegger) and that, there being no evidence of intent offered other than the card itself, the instrument must govern.

The Murdoch case holds that any statement or inference in the Winkler case that extrinsic evidence was material or admissible was dictum. It then, for the first time, enunciates the well-reasoned and firmly grounded rule that, there being a written contract between the bank and the depositors which is clear and unambiguous, there is no room for construction. Intent is still held to be controlling, but when the parties have expressed their intent by a written agreement in clear and definite terms the contract cannot be varied or altered by parol evidence. The opinion cites, to the same effect, 9 C. J. S., Banks and Banking, section 286, page 595; and it concludes, pages 903, 904 of 238 Iowa, "* * * in the absence of a plea of fraud, duress, or mistake, we are bound by the plain and expressed terms of the agreement. Extrinsic evidence tending to change this expressed intent is not competent."

We cited and followed the Murdoch case in McManis v. Keokuk Sav. Bk. & Tr. Co., 239 Iowa 1105, 33 N.W.2d 410. It is now the settled law in Iowa that when a definite written agreement, such as we have here, is made by a depositary bank with its customers, such agreement is binding upon the bank and the parties signatory, and if it is clear in its terms and meaning it cannot be changed by parol evidence. The contract is that the bank will, in

consideration of the deposit of funds with it and the creation of a debtor-creditor relation between itself and its depositors, consider them as owners in joint tenancy with right of survivorship, and not as tenants in common; and that upon the death of either depositor any balance in the account shall become the absolute property of the survivor. Language more definite, more explicit, could hardly be devised.

Plaintiffs contend, however, that the rule is different in equity. The McManis case, just cited, indicates otherwise. There was a complaint in that case that the trial court had erroneously overruled a motion to transfer to equity. We said:

"Moreover, the trial was actually conducted as an equity case and the judgment recites the result would have been the same in either forum." McManis v. Keokuk Sav. Bk. & Tr. Co., supra, page 1110.

It is a long-established maxim that equity follows the law; and it is equally true that general rules and principles as to relevancy, materiality, competency and admissibility generally apply to evidence in actions or proceedings involving or relating to trusts or trustees. 54 Am. Jur., section 608. W. H. Havens chose to enter into a clear, explicit and binding contract, which established a joint-tenancy relation between himself and the defendant, Eva Havens. The device of a claim of resulting trust will not serve to vary elementary rules of evidence, which apply in equity as well as at law. In the usual resulting trust case where the grantee furnishes no consideration for the conveyance to him, there is room for doubt, and so for construction, as to the intent of the alleged trustor. Not so here, where he has made his intent abundantly clear. This is the rule required by well-considered and long-established legal principles; and it is perhaps worth while to note that any other holding would subject many thousands of joint-tenancy conveyances to the hazard of similar litigation. A joint-tenancy holding of the homestead between husband and wife is a most common device; and it is without doubt true that in most of these cases the wife has furnished no more of the consideration than Eva Havens did here.

III. We have discussed and determined the proper ruling as to the bank deposit in the preceding division. We think the

reasoning and the precedents cited require a similar holding in regard to the United States bonds. We held in In re Estate of. Murray, 236 Iowa 807, 822, 20 N.W.2d 49, 56, that under United States Treasury regulations, in effect, and almost in language, identical with those governing in this case, upon the death of one co-owner the other became entitled to the legal title to the bonds. It is true the Murray case closes with this:

"In appellant's reply to the brief of the United States Attorney, filed in this court as amicus curiae, appellant contends that the treasury regulations ought not to be a cloak for a disloyal or dishonest agent or furnish a haven for fraudulent grantors and their fraudulent grantees. There is no such question presented by this record. Equity has broad powers to enforce constructive or resulting trusts to relieve against acts of fraud and the like. Such powers relate to the equitable title to property as distinguished from the legal title. No equitable title to these bonds is asserted by this estate. The widow bases her claim on the fact that she has legal title to these bonds. The executrix denies that she has such legal title. That is the only issue before us. On that issue, the widow is entitled to prevail."

But the writer of the opinion was obviously answering the argument that in some manner fraud might be aided by the holding made, and was demonstrating that equity could furnish a remedy. We have no fraud alleged or proven in the instant case.

Paragraph (c) of section 315.45, United States Treasury Regulations Governing United States Savings Bonds, says:

"If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the *sole and absolute owner* of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to the survivor." (Italics supplied.)

Almost identical is the regulation covering a registration in the name of an owner, payable on death to another:

"If the registered owner dies without having presented and surrendered the bond for payment or authorized reissue and is

survived by the beneficiary, upon proof of such death and survivorship, the beneficiary will be recognized as the *sole and absolute owner* of the bond, and payment or reissue, as though the bond were registered in his name alone, will be made only to the survivor." (Italics supplied.)

These regulations became a part of the contract. We have here a situation comparable to the signature card at the bank, which definitely binds the depositary to recognize a' joint tenancy. The words "sole and absolute owner" are strong, and leave no room for equitable interests or construction to determine intent. By placing the bonds in the names of himself and Eva Havens as co-owners, or by naming her as beneficiary by the "pay on death" clause, in the light of the Treasury Regulations, W. H. Havens made a definite contract for joint tenancy which the United States Government was bound to recognize, and which is just as immune from attack as the joint-depositary agreement with the bank; fraud, deceit, duress or mistake alone excepted. This exception covers cases where, as in In re Estate of Lundvall, 242 Iowa 430, 46 N.W.2d 535, a claim of confidential relationship was made and established. The element of fraud, constructive at least, then enters into the case. Curtis v. Armagast, 158 Iowa 507, 520, 138 N.W. 873, 878. No such claim is made in this case.

The holding and judgment of the trial court was right.— Affirmed.

OLIVER, C.J., and GARFIELD, WENNERSTRUM, MULRONEY, SMITH, MANTZ, and HAYS, JJ., concur.