ESTATE OF Emmet AWTRY, Deceased,
Nellie Awtry, Executrix, Petitioner,
v.
COMMISSIONER OF INTERNAL
REVENUE, Respondent.
No. 15181.

United States Court of Appeals
Eighth Circuit.
April 26, 1955.

Ned P. Gilbert, Oskaloosa, Iowa, for petitioner.

L. W. Post, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to the Atty. Gen., were with him on the brief), for respondent.

Before SANBORN, COLLET and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This case is before this court on petition by the Estate of Emmet Awtry, Deceased, for review of the decision of The Tax Court, 22 T.C. 91, determining a deficiency in estate tax in the amount of $3,823.12. The Commissioner and The Tax Court denied petitioner a marital deduction as to certain property, hereinafter described, held by decedent and his spouse as joint tenants. The court based its decision upon its conclusion that the interest of the surviving spouse, Nellie Awtry, in the joint tenancy property was a terminable interest as defined by 26 U.S.C. § 812(e) (1) (B).[1] The petitioner contends that The Tax Court erred in so holding for the reason that the joint tenancy property passed as the result of the joint tenancy contract, that the surviving spouse did not obtain an interest in any of such property

1. "§ 812. Net estate
&ast; &ast; &ast; &ast; &ast;
"(e) Bequests, etc., to surviving spouse
"(1) Allowance of marital deduction
&ast; &ast; &ast; &ast; &ast;
"(B) Life estate or other terminable interest. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; "

by virtue of the will, and that the interest acquired in the joint tenancy property by the surviving spouse was an absolute and complete interest and not a terminable interest. The decedent, Emmet Awtry, and his spouse, Nellie, were at all times material to this controversy residents of the State of Iowa.

On July 21, 1947, Emmet Awtry and Nellie Awtry executed a joint mutual will which, so far as material to this controversy, provides:

### "Article Two.

"Whatever property we own, real or personal, we jointly own whether or not so recorded, and we have agreed and do hereby agree that the survivor of us shall have the full use and income and control of all our property as long as the survivor of us shall live.

### "Article Three.

"After the death of the survivor of us all our property, real and personal, shall be sold by our trustees hereinafter named and the net proceeds shall be divided into two equal parts to be distributed amongst our nephews and nieces hereinafter named, to-wit: * * *"

Emmet Awtry died July 31, 1950, survived by his wife, Nellie. The foregoing instrument was admitted to probate on August 23, 1950, as the last will of Emmet Awtry. His spouse, Nellie Awtry, qualified as executrix and elected to take under the will. A timely federal estate tax return was filed. As adjusted the following values are agreed upon:

Gross estate (including full value of joint tenancy property upon which marital deduction is being claimed)    $106,181.62

Agreed deductions (excluding specific exemption and marital deductions)    11,608.72

Adjusted Gross Estate    $94,572.90

Deducting the $60,000 specific exemption from the adjusted gross estate leaves $34,572.90 subject to tax, upon which the tax due is the amount determined by The Tax Court. The marital deduction as to the joint tenancy property if allowable is in excess of the amount the Government contends is taxable, and if the estate is entitled to a marital deduction on the joint tenancy property there is no tax due.

■ The property as to which the marital deduction is claimed and the facts relative thereto are set out in the stipulation of the parties as follows:

"Among the assets making up the gross estate which Petitioner contends qualify for the marital deduction are the following:

"a. United States Savings bonds and United States Defense bonds, Series 'E' in the total value of $39,948.00 and United States Savings bonds, Series 'G' in the total amount of $2,000.00. The serial numbers of such bonds and the dates of acquisition thereof are as set forth in the federal estate tax return, Joint Exhibit 1–A, and the appraisement report of the Iowa State Inheritance Tax Appraisers attached to and made a part of said exhibit. All of said United States bonds were registered jointly in the names of 'Mrs. Nellie Awtry or Emmet Awtry' or 'Mr. Emmet Awtry or Nellie Awtry.'

"b. A checking account in the Pella National Bank, Pella, Iowa in the total amount of $6,718.65 deposited with the bank pursuant to an agreement between the depositors and the said bank that the amounts were deposited to the credit of and should pass to the survivor of either the decedent Emmet Awtry or Nellie Awtry.

"c. Real estate of the value of $10,000.00 acquired by warranty deed on the 28th day of February, 1944, by which warranty deed real estate was conveyed to Emmet Awtry and Nellie Awtry, as joint tenants and not as tenants in common,

with full right of survivorship, said real estate described as follows * * *."

Emmet Awtry contributed the consideration for the acquisition of said assets. The petitioner does not claim a marital deduction as to any property of which Emmet Awtry died seized. The instruments creating the joint tenancy are Iowa contracts. The will was executed and probated in Iowa. The effect that these various instruments have upon passing title to the property in controversy must be determined by the Iowa law. The State law creates the legal interests and rights. Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154; Kasper v. Kellar, 8 Cir., 217 F.2d 744; Irvine v. Helvering, 8 Cir., 99 F.2d 265.

■ Joint tenancies in real and personal property have long been recognized and enforced by the Iowa courts. Some of the cases dealing with real estate will first be considered.

In Wood v. Logue, 167 Iowa 436, 149 N.W. 613, real estate was deeded to three joint tenants. Upon the death of the first the administrator of her estate sought to sell the interest of the deceased joint tenant for the payment of debts. The Supreme Court denied this relief holding that upon death the interest of the joint tenant terminated. In the course of the opinion the court stated, 149 N.W. at page 615:

"* * * The survivors do not acquire title through the deceased, but by virtue of the deed. * * * As we have already suggested, neither of the successive survivors takes or receives anything from or through the deceased tenant for the title is derived directly from the grantor through the deed which created the tenancy. * * * Such a disposition of property is not obnoxious to any statute of this state or to any recognized principle of common law, nor can we conceive of a good reason for holding it to be against any accepted rule of public policy. * * * It follows that

Sarah Logue, being first of the grantees to die, did not die seized of any heritable interest in the land or of any right or interest therein which could be properly subjected to sale by the administrator of her estate. None of the cases decided by this court and cited by appellee is inconsistent with this conclusion."

In Hruby v. Wayman, 230 Iowa 653, 298 N.W. 639, title was acquired by husband and wife by deed in joint tenancy. The husband died first. The court quieted title in the wife's devisees against the claim of the husband's heirs, stating, 298 N.W. at page 641:

"We conclude the language in the granting clause of the deed, 'or the survivor of either,' is sufficient to clearly manifest an intention to create an estate in joint tenancy with survivorship incident thereto. It follows that upon the death of Grant Wayman no title to the realty passed to his heirs. Instead the title vested absolutely in Lena Wayman under the deed, and subsequently in appellees as devisees under her will. * * *"

In Wernet v. Jurgensen, 241 Iowa 833, 43 N.W.2d 194, at page 197, we find the following:

"* * * Ground D of the motion is based upon the allegations in plaintiff's pleadings that Hans and Goldie were joint tenants with right of survivorship. The rule is settled that when Hans died title to the property immediately vested absolutely in Goldie under the 1942 deed. Hruby v. Wayman, 230 Iowa 653, 298 N.W. 639; Switzer v. Pratt, 237 Iowa 788, 23 N.W.2d 837; 48 C.J.S., Joint Tenancy, § 1, p. 911. * * *"

■ Joint tenancies in bank accounts have been considered and recognized by the Iowa court on a number of occasions. In Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870, the prior decisions involving joint tenancies in bank deposits are analyzed and considered. In that case the

beneficiaries under the decedent's will sought to impress a resulting trust upon a joint tenancy bank account and co-ownership Government bonds. This re-lief was denied. In discussing some of the prior cases involving the same problem, the court stated, 48 N.W.2d at page 875:

"* * * We think it should also be pointed out again that we had not, at the time of the decision of these cases, clearly adopted the con-tract and joint tenancy theory. * * *"

The present rule is thus stated, 48 N.W.2d at page 876:

"* * * It is now the settled law in Iowa that when a definite written agreement, such as we have here, is made by a depositary bank with its customers, that such agree-ment is binding upon the bank and the parties signatory, and if it is clear in its terms and meaning, it cannot be changed by parol evidence. The contract is that the bank will, in consideration of the deposit of funds with it and the creation of a debtor-creditor relation between it-self and its depositors, consider them as owners in joint tenancy, with right of survivorship, and not as tenants in common; and that upon the death of either depositor any balance in the account shall become the absolute property of the sur-vivor. Language more definite, more explicit, could hardly be devised."

See also McManis v. Keokuk Savings Bank & Trust Company, 239 Iowa 1105, 33 N.W.2d 410; In re Estate of Mur-doch, 238 Iowa 898, 29 N.W.2d 177.

It is not clear from the stipu-lation whether the agreement in this case that the bank deposits passed to the survivor was in writing. We do not deem this material as under the stipu-lation there is no controversy about the intention of the bank and the depositors to establish a joint tenancy in the bank account. As stated in the cases above cited, the intention of the bank and its depositors is the controlling considera-tion. The bank and its depositors, the Awtrys, clearly manifested their inten-tion that the deposit balance should be-come the property of the survivor of the Awtrys. Under such circumstances, un-der the Iowa law the balance remaining in the bank account at the death of Emmet Awtry became the absolute prop-erty of the survivor, Nellie Awtry.

The Iowa court has also fre-quently had occasion to consider the legal rights of the surviving co-owner of Government bonds. The Iowa court has repeatedly held that upon the death of one co-owner the survivor becomes the sole and absolute owner of the bonds held in joint tenancy by virtue of the contractual rights and obligations evi-denced thereby when considered with the Treasury Regulations incorporated therein by reference. In re Clemmons Estate, 242 Iowa 1248, 49 N.W.2d 883; In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49; In re Damon's Guardian-ship, 238 Iowa 570, 28 N.W.2d 48; In re Sprague's Estate, 244 Iowa 540, 57 N.W. 2d 212; Hill v. Havens, supra. Hill v. Havens, supra, quotes paragraph (c) of § 315.45, Treasury Regulations Govern-ing United States Savings Bonds, and then states, 48 N.W.2d at page 877:

"These regulations became a part of the contract. We have here a situation comparable to the signa-ture card at the bank, which definite-ly binds the depositary to recognize a joint tenancy. The words 'sole and absolute owner' are strong, and leave no room for equitable inter-ests or construction to determine in-tent. By placing the bonds in the names of himself and Eva Havens as co-owners, or by naming her as beneficiary by the 'pay on death' clause, in the light of the Treasury Regulations, W. H. Havens made a definite contract for joint tenancy which the United States Govern-ment was bound to recognize, and which is just as immune from at-tack as the joint depositary agree-ment with the bank; fraud, deceit,

duress or mistake alone excepted. * * *"

The regulations quoted in the Hill case are identical with the regulations applicable to the bonds in our present case. It is also noted that in the Hill case, as in our present case, some of the bonds were purchased prior to the date of the will and some thereafter. An annotation covering judicial decisions involving U. S. War Savings Bonds appears in 37 A.L.R.2d 1221. Therein the position taken by the Iowa court, as hereinabove set out, is described as the majority view. Cases reaching a contrary result are also discussed. Among other things the annotation states:

"In the application of the majority rule that the surviving co-owner is the sole and absolute owner of the bonds registered in co-ownership form in accordance with Treasury Regulations under which they were issued, it has been held that such bonds are not part of the estate of the deceased co-owner so as to be subject to disposition under the terms of his will."

It appears to be clear under the Iowa law that the surviving co-owner of Government bonds becomes the absolute owner thereof.

This court had occasion to consider the effect of joint tenancy upon property in considering the liability of a transferee for payment of income taxes of the transferor in Irvine v. Helvering, supra. Minnesota law was there involved. The court held the surviving joint tenant was not a transferee, and as a basis for such decision this court speaking through Judge Sanborn states, 99 F.2d at page 269:

"The rule is that a surviving joint tenant becomes the absolute owner of the property held in joint tenancy, upon the death of the cotenant, free of the claims of the heirs or creditors of the deceased. 14 Am. Jur. page 80; Musa v. Segelke & Kohlhaus Co., 224 Wis. 432, 272 N. W. 657, 111 A.L.R. 168; Wood v.

Logue, 167 Iowa 436, 149 N.W. 613, 615, Ann.Cas.1917B, 116; In re Peterson's Estate, 182 Wash. 29, 45 P.2d 45. That this is the rule in Minnesota is clear from the Minnesota cases already cited. The estate of a deceased joint tenant takes nothing, his heirs take nothing, and his creditors take nothing; the surviving joint tenant takes everything."

We find the following language in Judge Arundell's dissenting opinion in the Tax Court in the present case very persuasive:

"It is a fundamental principle of law that property held in joint tenancy passes to the surviving tenant by operation of law. Property thus held is not capable of testamentary devise or disposition. As stated by Judge Phillips of the Tenth Circuit in Hernandez v. Becker, 54 F.2d 542, 547, 'The chief incident of such an estate is the right of survivorship * * *. The survivor does not take the moiety of the other tenant from him or as his successor, but takes it under and by virtue of the conveyance or instrument by which the joint tenancy was created.' In 14 Am.Jur., section 6, p. 80, the rule is stated as follows: 'A consequence of the doctrine of survivorship is that a joint tenant cannot devise his interest in the land, for the devise does not take effect until after the devisor's death, and the claim of the surviving tenant arises in the same instant with that of the devisee and is preferred thereto.' Thus, a will which purports to devise property held by the testator and another in joint tenancy with the right of survivorship is nugatory, at least insofar as it deals with the property jointly held.

* * * * *

"* * * What is unexplained in the majority's opinion is how the mere signing of a mutual will operates to reduce an estate in fee sim-

ple in the surviving joint tenant to a life estate."

In United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763, the constitutional right to levy an inheritance tax upon an interest obtained by a surviving joint tenant under Illinois law was upheld. In discussing the rights acquired by the surviving joint tenant the Court said, 306 U.S. at pages 370–371, 59 S.Ct. at page 555:

"* * * The 'grand incident of joint estate is the doctrine of *survivorship*, "by which, when two or more persons are seized of a joint estate, * * * the entire tenancy upon the decease of any of them remains to the survivors, and at length to the last survivor; and he shall be entitled to the whole estate, whatever it may be." '

"* * * Prior to decedent's death, his wife [the surviving joint tenant] had no right to dispose of her interest by will, nor could it pass to her legal heirs. She might survive and thereby obtain a complete fee to the property with attendant rights of possession and disposition by will or otherwise. * *"

■■ We are convinced after a careful consideration of the authorities above cited that Nellie Awtry received complete and absolute fee simple title to the joint tenancy real estate, the joint bank deposits, and the jointly-held Government bonds by virtue of the deeds and contracts creating such joint tenancies. No interest in any of such property ever reached the estate of Emmet Awtry. Emmet Awtry's death terminated all interest that he had in the joint tenancy property. A will only operates upon such property as a decedent may own at the time of his death. We conclude that so far as the involved joint tenancy properties are concerned there was nothing for Mr. Awtry's will to operate upon, and this is true even if it be conceded that the will by its terms was broad enough to include the joint tenancy property.

The Commissioner relies upon Jennings v. McKeen, Iowa, 65 N.W.2d 207, and other Iowa cases relating to joint and mutual wills to support his contention that the interest passing to Mrs. Awtry in the joint tenancy property was a terminable interest. In the Jennings case, husband and wife in the same instrument made joint and mutual wills, containing identical provisions for the benefit of third persons upon the death of the survivor of them, among them a legacy for $1,000 to plaintiff which was made a charge upon real estate. Some of the property was held in joint tenancy. The husband died first. The wife had made a new will, and prior to her death had disposed of her property and that acquired from her husband to such an extent that insufficient property remained in her estate to pay the plaintiff's legacy. The probate court established plaintiff's claim against the wife's estate to the extent of the legacy, and thereafter plaintiff brought an equitable action to have this claim established as a lien against 850 acres of land transferred by Mrs. McKeen without adequate consideration. The plaintiff prevailed. The court said, 65 N.W.2d at page 209:

"Our decisions establish that in a joint or mutual will for the benefit of the survivor there is 'an element of contractual and mutual obligation between the makers' which may become important if there be no revocation by either during the life of the other and if there be provision therein for the benefit of a third party. Baker v. Syfritt, 147 Iowa 49, 55 et seq., 125 N.W. 998; Campbell v. Dunkelberger, 172 Iowa 385, 389–392, 153 N.W. 56; Anderson v. Anderson, 181 Iowa 578, 584–586, 164 N.W. 1042; Maurer v. Johansson, 223 Iowa 1102, 274 N. W. 99; Maloney v. Rose, 224 Iowa 1071, 277 N.W. 572; Child v. Smith, 225 Iowa 1205, 1214, 282 N.W. 316; Culver v. Hess, 234 Iowa 877, 882 et seq., 14 N.W.2d 692; In re Estate

of Johnson, 233 Iowa 782, 787, 10 N.W.2d 664, 148 A.L.R. 748; De-Jong v. Huyser, 233 Iowa 1315, 1320, 11 N.W.2d 566."

The court also states, 65 N.W.2d at page 211:

> "The fact that a large part of the property was held by testators in joint tenancy does not prevent application of the contractual theory. * * *

> "* * * That the survivor became owner by virtue of the joint tenancy is immaterial so long as she received benefits under the will sufficient to constitute a consideration to support the contract. The legacy was to be paid out of the survivor's estate regardless of the source of the property of such estate."

Liability in the Jennings case is predicated upon the obligation of the survivor to fulfill her contractual obligation. There is nothing in the opinion to indicate that there is anything about a joint and mutual will which precludes the operation of the usual rules relating to joint tenancies. It seems clear that the court assumed that such rules operated.

In In re Farley's Estate, 237 Iowa 1069, 24 N.W.2d 453, one of the issues was whether a mutual will based on a consideration could be revoked. As to this the court said, 24 N.W.2d at pages 457–458:

> "* * * Such a revocation without notice would constitute a breach of the contract, pursuant to which the wills were executed.

> "The rule seems to be well established that, as such a revocation constitutes a breach of the contract, relief is to be afforded on that basis but the revoked will can not be probated. In Doyle v. Fischer, 183 Wis. 599, 198 N.W. 763, 765, 33 A.L.R. 733, the court stated: 'It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands, and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud.'

> "* * * We are satisfied that the remedy in a case of revocation of a joint or mutual will without notice is an action for damages for breach of contract or for specific performance and that the revocation will prevent the probate of the revoked will. * * *"

See also Annotation, 169 A.L.R. 9; and Article by Henry J. TePaske of the Iowa Bar appearing in 24 Iowa Law Review Bar Association, Section 15. Many of the Iowa cases dealing with joint and mutual will problems are cited and discussed in the authorities above referred to. The usual rules as to wills appear to apply to joint and mutual wills so far as the testamentary aspects thereof are concerned.

■ The joint will of Mr. and Mrs. Awtry is the separate will of each of them. To make the wills effective, separate probate upon the death of each of them is required. Each will passes the property owned by each testator at the time of his death. All of the usual and ordinary rules pertaining to wills and the property passing thereunder prevail. It appears to us that there was nothing which Mr. Awtry by his will as a testamentary instrument could do to affect the complete title in the joint tenancy property which had passed to Mrs. Awtry by survivorship.

■ We wish to emphasize again that the effect of Mr. Awtry's will upon the property owned by Mr. Awtry at the time of his death is in no way involved in this case. As to such property it may be conceded for the purposes of this case that Mrs. Awtry's interest is a terminable interest.

■ It now becomes necessary to determine whether the contractual features of the joint will are such as to make the interest acquired by Mrs. Awtry in the joint tenancy property a terminable interest within the meaning of 26 U.S.

C. § 812(e) (1) (B). Many Iowa cases have dealt with the contractual features of mutual wills. They are cited in the Jennings case, supra. The Iowa court quite readily infers from the mutual wills that such wills are executed pursuant to contract, and that the parties have obligated themselves not to revoke such wills after the death of one of the parties, no revocation having been effected during the time both lived. In Culver v Hess, 234 Iowa 877, 14 N.W.2d 692, the husband and wife made mutual wills. The husband died. The guardian of the wife brought an action to quiet title in the wife as survivor and to construe the survivor's rights. The court refused to quiet title, but determined the survivor's rights as follows, 14 N.W. 2d at page 693:

"* * * that the will by the terms of paragraph three devised to Minerva E. Hess absolute control of all property of which Henry J. Hess died seized, or to which she afterwards acquired title, and gave to her the right to freely deal with such property during her lifetime as though her title therein was absolute and in fee simple: but that this right existing in Minerva E. Hess or her guardian during her lifetime does not include the right of Minerva E. Hess to dispose of the property to make testamentary disposition of any property existing at the death of Minerva E. Hess, whether jointly or severally owned property of both or either of said testators executing said will and that she is bound by the terms of paragraph five of the will as by contract. * * *"

In Schultz v. Brewer, 244 Iowa 21, 55 N.W.2d 561, 563, the court found that the survivor had not contracted as to the disposition of his property. The court discusses a number of mutual will cases, and says, 55 N.W.2d at pages 563–564:

"Even where a surviving spouse is obligated to dispose of his property at death in a certain manner courts are slow to hold he cannot

dispose of his own property in good faith during his lifetime unless he has expressly agreed not to do so. Plaintiffs do not allege here that the deed from Joseph to his daughter Helen was not made in good faith. Nor, we may add, is there any claim of implied agreement between Joseph and Mary which was violated by Joseph's deed to Helen.

"The Annotation in 108 A.L.R. 867, 868–869, says: 'It may be stated generally that the courts will not consider that the parties to a joint and mutual will intended to limit the disposition by each of his or her own property in good faith during his or her lifetime, unless a plain intention to this effect is expressed in the will or in the agreement pursuant to which it is executed. Thus, where husband and wife, pursuant to agreement between them, make a joint will giving to the survivor the income of their real and personal property during life, and providing that after the death of the survivor the property shall be divided in a certain manner, each during his lifetime remains the absolute owner of his own property, with all the rights of an owner, and nothing short of plain and express words to that effect will be sufficient to limit the use of, or to impress a trust upon, the property of the other during his or her lifetime, so as to prevent disposition thereof by the owner in good faith after the death of the other spouse.' We will mention some decisions which support the text."

Relief for revocation of a mutual will by the survivor in the way of damages or specific performance appears to be based on fraud or a wrongful intent to dispose of the property to defeat the contract. It would seem that, in the absence of an express contract prohibiting any survivor from dealing with his own property, in a case like this, where the residuary beneficiaries are nephews and nieces, the parties did not intend to deprive the survivor of

the use of the property to which he held title, for proper purposes, such as his support or comfort. In the Jennings case, supra, the court emphasizes that the evidence does not justify a finding that there was a bona fide sale to provide money for the support of the survivor. A somewhat similar conclusion was reached in DeJong v. Huyser, 233 Iowa 1315, 11 N.W.2d 566.

A successful action for damages against the survivor resulting in judgment would not in itself defeat the title of the survivor. The title would be divested only through an execution sale.

No cause of action would arise upon any contract inferred from the mutual wills prior to breach thereof. So far as the record shows, no controversy may ever develop as to any contractual obligations that may be inferred from the will. The ultimate beneficiaries are named nephews and nieces of each of them. The parties' stipulation herein provides:

"There is no action of any nature now pending in any court nor so far as now known is there any action intended in which any of the beneficiaries named in said Last Will and Testament contend that the widow, Nellie Awtry, does not have the right and power to spend, consume or dissipate any of the assets described in Par. 5 of this Stipulation." (These assets are the joint tenancy properties hereinabove described.)

There is nothing in the record to indicate that Mrs. Awtry has any desire to change her will. If no change is made in Mrs. Awtry's will, upon her death all of her individual property, including that which she acquired as surviving joint tenant, will pass by her will to the beneficiaries named therein, in the manner in which wills normally operate. It is elementary that no interest in the decedent's property passes by descent or will until the death of the decedent. A person's will, prior to its becoming operative upon death, does not place any restriction upon the title to his property.

As a separate and distinct reason for refusing to deny the marital deduction as to the jointly-owned property, we note that so far as the record discloses the survivor voluntarily surrendered the right to revoke her will. Any restriction which may have been placed upon her right to revoke could, under the circumstances of the case, only be imposed upon her by her voluntary act. The husband was without any power or right to restrict the wife's right to deal with property she might own at the time of her death. The estate tax involved here is that due from the husband's estate. It seems unreasonable to hold that by his contract the husband could, for estate tax purposes, reduce his wife's independently acquired fee simple title to what is defined in the estate tax law as a terminable interest. The contractual restrictions now relied upon by the Commissioner were not imposed by Mr. Awtry in connection with the creation of the various joint tenancies. If the contract now relied on was part of the consideration for the joint tenancies, there would be more merit in the Commissioner's present position. Such, however, is not the case under this record.

Section 811(e) makes joint tenancy interests taxable. Section 812(e) applies the marital deduction to such property. The Government in its brief states (p. 12):

"It is true that under Section 812(e) (3), there is treated as an interest passing from the decedent to his surviving spouse the interest held at the time of the decedent's death by the decedent and his spouse in a joint tenancy or any other co-ownership with right of survivorship to which Section 811(e) of the Code applies. S.Rep. No. 1013 (Part 2), 80th Cong., 2d Sess., p. 3 (1948–1 Cum.Bull. 331, 333). But that provision is plainly qualified by Section 812(e) (1) (B) which disallows the deduction in the case of a terminable interest such as a life

estate to the surviving spouse with remainder to other persons." In imposing the tax on joint interests and allowing the marital deduction as to such interests, the joint interests are treated by statute as having passed from the decedent. This involves an assumption contrary to fact. As we have previously demonstrated, the joint property does not pass from the decedent, but passes by virtue of the instruments creating the joint tenancies. However, taxation upon joint tenancy property has been upheld. United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763. As to the basis of taxation, the Court said, 306 U.S. at page 371, 59 S.Ct. at page 555:

"*  *  * There was—at his death—a distinct shifting of economic interest, a decided change for the survivor's benefit. This termination of a joint tenancy marked by a change in the nature of ownership of property was designated by Congress as an appropriate occasion for the imposition of a tax. *  *  *"

We will now consider the question of the meaning of the words "passed from the decedent" in section 812(e) (1) (B), set out in footnote 1. We do not believe that there is anything which requires us to give these words any strained or artificial construction. The natural construction should prevail. Section 812(e) (3) defines the situations where interests are to be considered as passing from the decedent. There is nothing in such definitions which requires us to hold that a restriction voluntarily placed by a beneficiary upon her own property turns an absolute interest into a terminable one. As to this Judge Arundell, in his dissenting opinion, states:

"Congress sought in the Revenue Act of 1948 to equalize the treatment accorded residents of community property states and non-community property states and to that end there was provided the so-called marital deduction with which we are here dealing. Deductions are determined by Congress and if, as I believe, the joint property in question came to petitioner by operation of law, the full test of the statute is met. It seems to me that the holding of the majority serves to defeat the purpose Congress had in mind."

We conclude that Mrs. Awtry acquired absolute title to the joint tenancy property through the joint tenancy contracts, that the will as a testamentary instrument in no way affects the title to the joint tenancy property, and that the joint tenancy property did not by reason of anything done by Mr. Awtry pass to others than his surviving spouse. The estate is entitled to the marital deduction on the property passing to Mrs. Awtry by the joint tenancy contracts.

The judgment of The Tax Court is reversed.